No. 04-99-00475-CV



Jay MENNA and Jay Menna Insurance Agency, Inc.


 d/b/a USI Wood/Menna & Co., and d/b/a Wood/Menna & Co.,


Appellants



v.



Ron ROMERO 


d/b/a Physicians, Surgeons and Hospitals Professional Services,


Appellee



From the 288th Judicial District Court, Bexar County, Texas


Trial Court No. 99-CI-04605


Honorable Frank Montalvo, Judge Presiding (1)



ON APPELLANTS' MOTION FOR REHEARING


Opinion by: Alma L. López, Justice

Dissenting opinion by: Sarah B. Duncan, Justice

 

Sitting: Alma L. López, Justice

 Catherine Stone, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: February 28, 2001 


REVERSED AND REMANDED IN PART; AFFIRMED IN PART


 Appellant's motion for rehearing is granted. This court's opinion and judgment dated January
5, 2000 are withdrawn, and this opinion and judgment are substituted. 

 This is an accelerated, interlocutory appeal of an order granting a temporary injunction and
an order denying appellant's motion to stay proceedings pending arbitration and to refer the case to
arbitration. For reasons stated in this opinion, we reverse the trial court's order denying the motion
to stay proceedings and for referral to arbitration, but we affirm the order granting the temporary
injunction. The cause is remanded to the trial court for further proceedings consistent with this
opinion.

Background


 The parties to this dispute are insurance agents and agencies, each of whom markets medical
malpractice insurance to physicians, surgeons, and hospitals. The parties had an arrangement
whereby Romero's agency solicited clients and submitted them to Menna's agency, as broker, for
application to a malpractice carrier for coverage. Litigation between the two parties was resolved
by an agreement signed on August 6, 1998. The agreement provided, inter alia, an agreement to
continue their business relationship and a covenant not to compete clause by Menna concerning any
of Romero's clients for a period of two years from the expiration of any policy covered by the
agreement. The agreement also contains an arbitration clause.

 As it became time to renew the policies affected by the agreement, the dispute erupted again.
On March 31, 1999, Romero filed a petition alleging tortious interference with the contract, breach
of contract, libel and slander, and seeking recovery of attorney's fees. Romero also sought injunctive
relief and obtained a temporary restraining order prohibiting Menna from directly or indirectly
contacting and soliciting business involving the provision of insurance coverage from any doctor
listed in the 1998 agreement. The order also restrained Menna from not issuing policies to the
doctors on the list and from taking any action to cancel such policies. The hearing on a temporary
injunction was originally set for April 12, 1999, but was reset for April 21, 1999. On April 20, 1999,
Menna filed a response denying the allegations and requesting that all claims be referred to binding
arbitration. On that same day, Menna also filed a motion for continuance of the preliminary injunction
hearing. 

 At the injunction hearing on April 21, the trial court heard and denied the motion for
continuance. Romero limited his request for injunctive relief to requiring all contact by Menna with
the listed physicians about their insurance policies be made through Romero until a final judgment
resolves the current dispute. After hearing testimony from four witnesses, the court issued a
temporary injunction, finding that Romero had presented a prima facie case on three causes of action:
libel and slander, breach of contract, and tortious interference with contract. The court further found
that, if Menna's actions were not restrained, there was a probability of injury for which there was no
adequate remedy at law, specifically loss of business, loss of good will, loss of commissions, and loss
of reputation in the context of these causes of action. Bond was set at $1,000.

 During the lunch recess on the day of the injunction hearing, Menna filed a plea to the
jurisdiction, a motion to abate, and a "subject to" original answer. Menna subsequently filed a motion
to stay proceedings pending arbitration and for referral to arbitration. On May 12, 1999, Menna's
plea in abatement was heard and focused on the arbitration clause in the agreement. The court took
judicial notice of the agreement in the court's file and the transcript of the injunction hearing (as no
written orders had issued yet). The court denied the plea in abatement and motion to stay
proceedings pending arbitration and for referral to arbitration on the grounds that Menna had waived
these contractual rights by participating in the injunction hearing without urging arbitration. Menna
appealed both orders.

Arbitration


 Menna first complains that the trial court erred in denying his motion to refer this matter to
a binding arbitration proceeding. Menna introduced the arbitration agreement into evidence and
requested the trial court to stay the proceedings and refer the matter to arbitration based on the
pleadings on file. The agreement contemplates that the parties will resort to arbitration should either
party claim "a right to recover damages or other relief for contract, tort, fraud, misrepresentation or
any other such claims." 

 Texas courts favor arbitration agreements. See Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266,
268 (Tex. 1992). Accordingly, any doubts regarding the scope of the arbitration agreement are
resolved in favor of arbitration. See Cantella & Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex.
1996) (orig. proceeding). Romero's claims grounded in breach of contract, tortious interference with
contract, libel and slander easily fall within the scope of the agreement. Furthermore, the claim for
injunctive relief arguably falls within the arbitration provision of the parties' agreement. See J.J.
Gregory Gourmet Servs., Inc. v. Antone's Import Co., 927 S.W.2d 31, 35-36 (Tex. App.-Houston
[1st Dist.] 1995, no writ) (broad arbitration clause and absence of specific prohibition to grant
injunctive relief brings such claim within scope of agreement). Romero argued, however, that Menna
had waived his right to arbitrate because he did not raise it during the temporary injunction hearing.

 Whether arbitration is required is a matter of contract interpretation and a question of law for
the court. Emerald Texas, Inc. v. Peel, 920 S.W.2d 398 (Tex. App.-Houston [1st Dist.] 1996, no
writ). A court deciding a motion to compel arbitration must determine whether the parties agreed
to arbitrate, and, if so, the scope of the arbitration agreement. Merrill Lynch, Pierce, Fenner &
Smith, Inc. v. Longoria, 783 S.W.2d 229, 230 (Tex. App.-Corpus Christi 1989, no writ). Therefore,
two questions must be decided: (1) Was there an agreement to arbitrate? (2) Does the agreement
encompass the claims asserted? If the court answers these two questions affirmatively, it must
compel arbitration. See Smith Barney Shearson, Inc. v. Finstad, 888 S.W.2d 111, 114 (Tex. App.-
Houston [1st Dist.] 1994, no writ). The agreement containing the arbitration agreement was entered
into evidence without objection. To the extent Romero's claims concern contacts Menna has made
to clients listed in the agreement for the time period specified, we find that the claims fall within the
scope of the arbitration agreement.

 We next turn to Romero's claim that Menna waived his right to arbitration. The arbitration
agreement invokes the provision of the Texas General Arbitration Statute. See Tex. Civ. Prac. &
Rem. Code §171.001 et seq. (Vernon 1997). Courts will not find that a party has waived a right to
enforce an arbitration clause by merely taking part in litigation unless the party has substantially
invoked the judicial process to the opposing party's detriment. See In re Bruce Terminix Co., 988
S.W.2d 702, 704 (Tex. 1998). The test for determining waiver is two prong: (1) did the party
seeking arbitration substantially invoke the judicial process; and (2) did the opposing party prove that
it suffered prejudice as a result? See Prudential Securities, Inc. v. Marshall, 909 S.W.2d 896, 898
(Tex. 1995). 

 Whether a party has waived its right to compel arbitration is a question of law. See In re
Bruce Terminix Co., 988 S.W.2d at 704. A strong presumption against waiver exists. See id.; see
also Prudential Securities, Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995). Waiver of an
arbitration right must be intentional. EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 89 (Tex. 1996)
(orig. proceeding). Implying waiver from a party's actions is appropriate only if the facts demonstrate
that the party seeking to enforce arbitration intended to waive its arbitration right. Id. The party
seeking to prove waiver bears a "heavy burden of proof," and any doubts regarding waiver are
resolved in favor of arbitration. See In re Bruce Terminix Co., 988 S.W.2d at 705. 

 We resolve the waiver issue based on the second prong of the test. Assuming, without
deciding, that the first prong of the test was met by the actions Menna had taken, including Menna's
demand for a jury trial and prompt setting which the trial court granted, Romero failed to prove that
he was prejudiced as a result.

 Romero filed his lawsuit on March 31, 1999. The temporary injunction hearing was held
twenty-one days after the lawsuit was filed. Menna's response to the injunction application, which
was filed prior to the hearing, requested that the claims be referred to arbitration. Menna's plea in
abatement and motion for referral to arbitration was heard on May 12, 1999 - approximately forty
days after suit was filed. Although the hearing on the plea in abatement occurred after the trial court
granted Romero a temporary injunction, Romero did not prove that compelling arbitration would
have an adverse effect on the enforcement of the temporary injunction order. See Tex. Civ. Prac.
& Rem. Code § 171.086 (Vernon Supp. 2000) (allowing trial court to grant injunctions before
arbitration proceedings begin and to enforce such orders during the period that arbitration is pending).
As a result, Romero failed to meet the "heavy burden" of proving that he suffered prejudice as a result
of Menna's actions during the forty days the lawsuit was pending before the hearing on Menna's plea
in abatement. The trial court's order denying Menna's motion to stay proceedings pending arbitration
and to refer the case to arbitration is reversed.



Temporary Injunctive Relief


 Menna's three remaining issues concern the trial court's temporary injunction. First, Menna
claims that the court erred by granting injunctive relief for alleged defamation because this order
represents an impermissible prior restraint on free speech. See Hajek v. Bill Mowbray Motors, Inc.,
647 S.W.2d 253, 255 (Tex. 1983) ("Defamation alone is not a sufficient justification for restraining
an individual's right to speak freely."). Secondly, Menna asserts that Romero has an adequate
remedy at law because he is also seeking money damages. And lastly, Menna labels as abuse of
discretion the court's granting injunctive relief in the absence of a showing of irreparable injury.

 In an interlocutory appeal from a temporary injunction, we do not review the merits of the
applicant's case. See David v. Huey, 571 S.W.2d 859, 861 (Tex. 1978). Rather, we limit our review
to whether there has been a clear abuse of discretion. See id. at 861-62. We may not substitute our
judgment for that of the trial court's, we merely determine whether the court's action was so arbitrary
as to exceed the bounds of reasonable discretion. Id. at 862. We are required to draw all legitimate
inferences from the evidence in a manner most favorable to the trial court's judgment. See Miller v.
K&M Partnership, 770 S.W.2d 84, 87 (Tex. App.-Houston [1st Dist.] 1989, no writ).

 At the injunction hearing, the court heard testimony from Holly Munchak, the office manager
to Dr. Balli, one of the clients listed in the agreement. She testified that she received an unsolicited
telephone call from Menna:

 Munchak: ... At that time he informed me that we did not have
coverage; that he was not going to cover us for our
malpractice policy, and did I understand this. And I
told him yes.

 He then informed me that Mr. Romero had only
forwarded five-hundred-and-thirty-something dollars
of the $900 that I had paid of my premium. And that
led me to believe that there was something illegal
going on. And then he gave me the name and the
phone number of the Texas Department of Insurance
and an investigator to contact if I had any other
questions or needed to know anything else ...or
wanted to talk to somebody about it. 


* * * * *


 Quirk: Did he encourage you to call him?


 Munchalk: He told me if I wanted any other answers, that I could
call him and he could tell me what happened to, like,
the rest of my money. And I just told him that I would
be in touch with Ron.


 * * * * *



 Quirk: Okay. What was your impression after having this
discussion with Mr. Menna?


 Munchalk: Well, after the discussion, I was very concerned. I felt
that maybe he was telling me, without actually telling
me, that Mr. Romero was doing something wrong and
illegal and that there was an investigation going on and
that I needed to call.


 * * * * *


 Quirk: Okay, Did he tell you that Mr. Romero was under
investigation? 


 Munchalk: Yes, he did tell me that.

 The court also heard Romero testify that Menna, in violation of the agreement, received
documents and information from Romero concerning insurance applications and then contacted the
clients directly without copying Romero, in effect, leaving Romero, their agent, out of the
communication loop. This put Romero at a disadvantage in servicing the client. Romero stated that
he was seeking injunctive relief to enforce the agreement:

 Because he's saying bad things about me. And also, by our previous agreement, any
correspondence he's supposed to send to me in writing and he doesn't do any of that,
nor has he in the past.

 And I don't know what's going on with the doctors ... there is a gap, ... I don't
know what's happening. You know, that leaves me to where I'm not doing my full
duties as an agent ...

Romero also testified that this was a highly competitive business where agents steal clientele from
other agents and that he had suffered serious damage because his clients had been told derogatory
information about him. This had resulted in losing clients to Menna. Romero further testified that
Menna had written directly to some of Romero's clients and tried to keep him from getting his
commission. In addition, the court heard testimony that on at least one occasion, two Laredo doctors
who practiced together with essentially similar practices were treated differently when their insurance
applications to the same carrier were presented through Menna's agency. The doctor whose
application was placed directly with Menna received a more favorable premium quote than the doctor
whose agent, Romero, placed the application with Menna, as broker. Romero opined that Menna,
as the exclusive broker for the carrier, had considerable influence with the carrier over rates.

 Based upon this and other evidence presented, the trial court found that Romero had a
probable right of recovery relative to libel and/or slander, a probable and substantial right of recovery
concerning his breach of contract claim and his tortious interference with contractual agreements
claim. The court further found imminent, irreparable harm in the potential loss of business, good will,
income, and reputation if the conduct in evidence were not restrained. Further, the court found that
to permit Menna to continue this conduct would alter the status quo during the interim and render
any judgment in Romero's favor ineffective - an inadequate remedy at law because Romero would
continue to lose business, good will, income, and suffer a damaged reputation. The trial court's
obligation at the temporary injunction stage is to maintain the status quo until a trial on the merits
resolves the dispute. See Turcotte v. Alice Nat'l Bank, 402 S.W.2d 894, 896 (Tex. 1966). The trial
court abuses its discretion in granting or denying a temporary injunction when it misapplies the law
to the established facts or when the evidence does not reasonably support the conclusion that the
applicant has a probable right of recovery. See State v. Southwestern Bell Tel. Co., 526 S.W.2d 526,
528 (Tex. 1975). We find no clear abuse of discretion in the court's ruling. 

Conclusion


 The trial court's order granting temporary injunction is affirmed. The trial court's order
overruling and denying Menna's motion to stay proceedings pending arbitration and for referral to
arbitration is reversed. The cause is remanded to the trial court for further proceedings consistent
with this opinion.

 Alma L. López, Justice


PUBLISH




1. The arbitration matter was heard by Visiting Judge James Clawson and the order denying relief was signed
by Visiting Judge Carlos C. Cadena. The temporary injunction matter was heard by Judge Andy Mireles, of the 73rd
Judicial District Court.









DISSENTING OPINION



No. 04-99-00475-CV



Jay MENNA and Jay Menna Insurance Agency, Inc.,


d/b/a USI Wood/Menna & Co. and d/b/a Wood/Menna & Co.,


Appellants



v.



Ron ROMERO,


d/b/a Physicians, Surgeons and Hospitals Professional Services,


Appellee



From the 288th Judicial District Court, Bexar County, Texas


Trial Court No. 99-CI-04605


Honorable Frank Montalvo, Judge Presiding



Opinion by: Alma L. López, Justice

Dissenting opinion by: Sarah B. Duncan, Justice


Sitting: Alma L. López, Justice

 Catherine Stone, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: February 28, 2001 


 I respectfully dissent. On its face, the injunction constitutes a prior restraint on speech; it is
overly broad; and it is not supported by evidence of imminent irreparable harm. See, e.g., Markel v.
World Flight, Inc., 938 S.W.2d 74 (Tex. App.-San Antonio 1996, no writ). Accordingly, I would
reverse the trial court's orders and remand the case to the trial court with instructions to refer the
case to arbitration.


 Sarah B. Duncan, Justice

Publish