**Wiley Sam DENNIS, Appellant,**

v.

**COLLEGE STATION HOSPITAL, L.P. d/b/a College Station Medical Center, Appellee.**

No. 10–04–00321–CV.

Court of Appeals of Texas, Waco.

June 1, 2005.

Rehearing Overruled June 28, 2005.

W. Stephen Rodgers, Rodgers, Miller & McLain PC, Bryan, for appellant.

Kenya S. Woodruff, Baker & McKenzie, Dallas, Michael R. Hoelscher, Hoelscher, Lipsey, Elmore & Benn, PC, College Station, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Wiley Sam Dennis appeals the court's decision to submit only his counterclaims against College Station Hospital to arbitration and the court's granting of the Hospital's summary judgment motion on its claim against him. Dennis contends in five issues that the court erred by: (1) failing to submit the parties' entire dispute to arbitration; (2) granting the Hospital's summary judgment motion; (3) awarding attorney's fees to the Hospital; (4) refusing to permit him to provide additional

evidence after the summary judgment hearing; and (5) failing to permit him to present several post-hearing motions. Because the court should have submitted the entire dispute to arbitration, we will reverse and render.

The Hospital recruited Dennis to help it begin a cancer treatment center. The Hospital and Dennis signed a Recruiting Agreement in June 2000. The effective date of the Recruiting Agreement was August 1, 2000. In an addendum to this agreement, the Hospital guaranteed that Dennis would have gross monthly cash receipts of $29,166.66 during the first twelve months of the contract term, and the Hospital agreed to loan Dennis on a monthly basis any sums less than the guaranteed amount. The Hospital further agreed to forgive and cancel 1/36 of the sums lent for every month after the first year Dennis continued a full-time practice in the community and remained a medical staff member in good standing with the Hospital.

The Hospital also executed a Professional Services Agreement with College Station Radiation Oncology Associates, P.A. which took effect on August 1, 2000.[1] The Professional Services Agreement essentially provided that Dennis would be the exclusive provider of therapeutic radiation oncology services for the Hospital during the four-year term of the contract. The Professional Services Agreement has the following arbitration clause:

*Alternate Dispute Resolution.* The parties firmly desire to resolve all disputes arising hereunder without resort to litigation in order to protect their respective business reputations and the confidential nature of certain aspects of their relationship. Accordingly, any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator or arbitrators shall be binding and conclusive on the parties, and shall be kept confidential by the parties to the greatest extent possible. No disclosure of the award shall be made by the parties except as required by the law or as necessary or appropriate to effectuate the terms thereof.

A dispute arose between Dennis and the Hospital, and he resigned in December 2001. The Hospital demanded that Dennis repay the money it had loaned him under the terms of the gross receipts guarantee. Dennis refused, and the Hospital filed suit against him for breach of the Recruiting Agreement. Dennis filed a countersuit alleging breach of contract, fraud, and fraudulent inducement. The Hospital contends (and Dennis does not dispute) that Dennis's counterclaim for breach of contract arises under the Professional Services Agreement.

The parties filed summary judgment motions, then the Hospital filed a motion to compel arbitration with regard to "the arbitral claims" at issue. The Hospital contended in the motion to compel arbitration that Dennis's counterclaims arose under or related to the Professional Services Agreement. Dennis did not file a response to the motion to compel arbitration.

The court conducted a hearing on the summary judgment motions and the mo-

---

1. The Hospital's representative signed the Professional Services Agreement in November 2000 and Dennis signed it on behalf of College Station Radiation Oncology Associates in March 2001. Nevertheless, the agreement expressly provided that it took effect in August 2000 regardless of when it was signed.

tion to compel arbitration, then took the motions under advisement for several months. The court granted the Hospital's summary judgment motion on its contract claim under the Recruiting Agreement and ordered that Dennis's counterclaims be arbitrated.

Dennis contends in his first issue that the court erred by failing to submit the entire dispute to arbitration.

■ In cases governed by the Texas arbitration statutes,[2] there are two issues to resolve: (1) whether the parties have a valid arbitration agreement and (2) whether the claims at issue lie within the scope of that agreement. *Brown v. Anderson*, 102 S.W.3d 245, 247–48 (Tex.App.-Beaumont 2003, pet. denied); *Menna v. Romero*, 48 S.W.3d 247, 250 (Tex.App.-San Antonio 2001, pet. dism'd w.o.j.); *Leander Cut Stone Co. v. Brazos Masonry, Inc.*, 987 S.W.2d 638, 640 (Tex.App.-Waco 1999, no pet.).

■ The only issue presented in this appeal is whether the entirety of the parties' dispute lies within the scope of the arbitration clause contained in the Professional Services Agreement. This is a question of law which we review *de novo*. *See Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd.*, 147 S.W.3d 507, 512 (Tex. App.-San Antonio 2004, no pet.); *Leander Cut Stone*, 987 S.W.2d at 640.

■ The law favors arbitration agreements. *See Associated Glass*, 147 S.W.3d at 512; *Perlstein v. D. Steller 3, Ltd.*, 109 S.W.3d 36, 39 (Tex.App.-Corpus Christi 2003, pet. denied); *Brown*, 102 S.W.3d at 247. Thus, we must resolve any doubts about the scope of an arbitration agreement in favor of arbitration. *Id.* "The policy favoring enforcement of arbitration

provisions is so compelling that a court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Perlstein*, 109 S.W.3d at 40 (quoting *Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex.1995) (original proceeding) (per curiam)); *accord Dewey v. Wegner*, 138 S.W.3d 591, 602 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Loy v. Harter*, 128 S.W.3d 397, 403 (Tex.App.-Texarkana 2004, pet. denied); *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex.App.-San Antonio 2000, no pet.).

■ When we determine whether a particular claim lies within the scope of an arbitration agreement, we examine the terms of the arbitration agreement and the factual allegations pertinent to the claim. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex.2001); *Loy*, 128 S.W.3d at 402; *Pennzoil Co.*, 30 S.W.3d at 498; *Leander Cut Stone*, 987 S.W.2d at 640. "Generally, if the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that is subject to the arbitration agreement, the claim will be arbitrable." *Pennzoil Co.*, 30 S.W.3d at 498 (citing *Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205–06 (Tex.App.-Houston [1st Dist.] 1997, orig. proceeding)); *accord AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 195 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

Other intermediate courts have required a closer relationship between the contract containing the arbitration clause and the

---

**2.** The Texas statutes governing arbitration of disputes (commonly referred to as the Texas Arbitration Act) are found in Chapter 171 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM CODE ANN. §§ 171.001–171.098 (Vernon Supp.2004–2005).

other claims at issue. Thus, it has been held:

> If [another] claim is so interwoven with the contract that it cannot stand alone, it falls within the scope of an agreement to arbitrate; if, on the other hand, [the other] claim is completely independent of the contract and could be maintained without reference to the contract, it falls outside the scope of an agreement to arbitrate.

*Associated Glass,* 147 S.W.3d at 513; accord *Loy,* 128 S.W.3d at 403; *Valero Energy Corp. v. Teco Pipeline Co.,* 2 S.W.3d 576, 590 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Valero Energy Corp. v. Wagner & Brown, II,* 777 S.W.2d 564, 566 (Tex.App.-El Paso 1989, writ denied).[3]

We believe that the broader relationship test articulated by the court in the *Pennzoil* case is more appropriate. To begin with, the term used in many arbitration agreements and in the agreement at issue here is the term "related"—not "interrelated," "interwoven," or "interdependent." In addition, because of the strong presumption in favor of arbitration, most courts agree that an arbitration request should not be denied *"unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue." *Prudential Secs.,* 909 S.W.2d at 900; *Dewey,* 138 S.W.3d at 602; *Perlstein,* 109 S.W.3d at 40; *Pennzoil Co.,* 30 S.W.3d at 498.

Here, the Hospital contends that the trial court properly declined to order the arbitration of its contract claim under the Recruiting Agreement because: (1) no party asked the court to refer this claim to arbitration; (2) the contracts are independent of each other; and (3) Dennis is not a party to the Professional Services Agreement. We disagree.

■ When a party calls the trial court's attention to the existence of an arbitration agreement, the court must determine the scope of the arbitration agreement. *Brown,* 102 S.W.3d at 248; *Menna,* 48 S.W.3d at 250; *see also* Tex. Civ. Prac. & Rem.Code Ann. § 171.025 (Vernon Supp. 2004–2005) (trial court must stay part of proceeding involving claims covered by arbitration agreement when application for arbitration made or arbitration ordered). Thus, we hold that a party cannot limit the claims which will be submitted to arbitration by failing to include certain claims within its motion to compel arbitration. *Cf. In re Serv. Corp. Intl.,* 85 S.W.3d 171, 174 (Tex.2002) ("There is a strong presumption against waiver" of arbitration); *Associated Glass,* 147 S.W.3d at 514 (same).

We also note that Dennis argued at the hearing on the Hospital's motion to compel that the agreements were related and should both be subject to arbitration. Accordingly, we reject the Hospital's contention that arbitration should be limited to Dennis's claims under the Professional Services Agreement because the Hospital's motion was so limited.

**3.** Although the San Antonio and Houston (14th) Courts of Appeals quoted the broader language set out in the paragraph above, these courts also referred to the more restrictive language set out in this paragraph. *See AutoNation USA Corp. v. Leroy,* 105 S.W.3d 190, 195 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (citing *Pennzoil Co. v. Arnold Oil Co.,* 30 S.W.3d 494, 498 (Tex.App.-San Antonio 2000, no pet.) (citing *Fridl v. Cook,* 908 S.W.2d 507, 511 (Tex.App.-El Paso 1995, writ dism'd w.o.j.))). The more restrictive language appears to find its origin in the 1989 decision of the El Paso Court of Appeals in *Valero Energy Corp. v. Wagner & Brown, II,* 777 S.W.2d 564, 566 (Tex.App.-El Paso 1989, writ denied).

As quoted above, the Professional Services Agreement requires the arbitration of "any controversy or claim arising out of or relating to this Agreement." Therefore, we must determine whether the factual allegations of the Hospital's claim for breach of the Recruiting Agreement " 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the" Professional Services Agreement. *Pennzoil Co.*, 30 S.W.3d at 498; *accord Hou–Scape*, 945 S.W.2d at 205–06.

The contracts at issue are contemporaneous, at least in terms of their effective dates. The contracts refer to each other. Both contracts undoubtedly relate to Dennis's service as a therapeutic radiation oncologist for the Hospital.

The Hospital focuses primarily on the fact that the parties' rights under these contracts could be litigated separately. *See Associated Glass*, 147 S.W.3d at 513; *Loy*, 128 S.W.3d at 403; *Teco Pipeline Co.*, 2 S.W.3d at 590; *Wagner & Brown*, 777 S.W.2d at 566. However, the same could be said of virtually any two legal theories of recovery. Therefore, because of the strong presumption favoring arbitration and because the two agreements at issue are closely related, we hold that that the arbitration clause in the Professional Services Agreement is broad enough in scope to include the Hospital's claim under the Recruiting Agreement. *See Associated Glass*, 147 S.W.3d at 513–14; *Dewey*, 138 S.W.3d at 602–03; *AutoNation USA*, 105 S.W.3d at 196–98; *Pennzoil Co.*, 30 S.W.3d at 498–99; *In re Conseco Fin. Servicing Corp.*, 19 S.W.3d 562, 570 (Tex.App.-Waco 2000, orig. proceeding); *Teco Pipeline Co.*, 2 S.W.3d at 590–91; *Hou–Scape*, 945 S.W.2d at 206.

The Professional Services Agreement was executed by the Hospital and by College Station Radiation Oncology Associates, P.A. Thus, the Hospital argues that any claims it has against Dennis in his individual capacity are not subject to arbitration under an agreement the Hospital signed with the professional association.

Claims against a nonsignatory to an arbitration agreement are subject to arbitration if the claims against the nonsignatory "are based on the same operative facts and are inherently inseparable" from claims which could be asserted against a signatory to the agreement. *Teco Pipeline Co.*, 2 S.W.3d at 593; *accord In re Educ. Mgt. Corp.*, 14 S.W.3d 418, 424–25 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding); *Carlin v. 3V Inc.*, 928 S.W.2d 291, 297 (Tex.App.-Houston [14th Dist.] 1996, no writ); *Merrill Lynch, Pierce, Fenner & Smith v. Eddings*, 838 S.W.2d 874, 879 (Tex.App.-Waco 1992, writ denied); *cf. In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex.2005) (orig. proceeding) (nonsignatory plaintiff may be compelled to arbitrate a claim "only if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision").

Here, the Hospital's contract claim against Dennis satisfies this test. Therefore, the Hospital's claim against Dennis for breach of the Recruiting Agreement is subject to the arbitration clause contained in the Professional Services Agreement.

Accordingly, we sustain Dennis's first issue. We need not address the remainder of the issues presented.

We reverse the judgment and remand this cause to the trial court with instructions to stay all further proceedings in that court and order the parties to arbitrate their claims in accordance with the arbitration clause contained in the Professional Services Agreement. *See Associated Glass*, 147 S.W.3d at 514; *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110

S.W.3d 131, 142 (Tex.App.-Houston [1st Dist.] 2003, no pet.); *Teco Pipeline Co.*, 2 S.W.3d at 595.