# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-05-00610-CV

---

## In re Senior Living Properties, L.L.C.

---

### ORIGINAL PROCEEDING FROM LLANO COUNTY

---

## M E M O R A N D U M   O P I N I O N

Relator Senior Living Properties, L.L.C. has filed its petition for writ of mandamus, complaining of the trial court's refusal to abate the lawsuit brought by real party in interest Betty Robinett and require Robinett to participate in mediation and, if necessary, binding arbitration. We conditionally grant the petition for writ of mandamus. *See* Tex. R. App. P. 52.8.

Robinett was hired as an hourly employee by Senior Living in March 2002. On March 4, shortly after she began working for Senior Living, Robinett was asked to sign a "waiver and arbitration agreement," under which she agreed to enroll in Senior Living's "Employee Injury Benefit Plan" and to waive her right to sue for any injuries (the "March arbitration agreement"). Under that agreement, Robinett and Senior Living mutually agreed to resolve any disputes through binding arbitration and that the agreement could only be revoked or modified with mutual written consent. Robinett testified that she was told she had to sign the agreement to continue her employment with Senior Living. In late April or early May 2002, Robinett was shifted from an hourly position into a salaried position and was informed that her insurance had changed because "higher level employee[s] had a different insurance plan than the hourly employees." She was sent

a packet of information, which included a "Summary Plan Description" of Senior Living's Associate/Employment Protection Plan. The Summary explains that Senior Living is not a subscriber of the Texas Worker's Compensation Act and instead had established its own occupational injury benefit plan for its employees ("the Plan"). As in the March arbitration agreement, according to the Summary, Senior Living and its participating employees mutually agreed to resolve Plan-related disputes through binding arbitration and waived their rights to sue in court. The Summary provided that the arbitration agreement could be revoked or modified only by mutual consent. The Summary concludes with an "Enrollment and Arbitration Agreement" (the "Agreement"), which states that the employee, by signing the Agreement, understood that she was eligible to participate in the Plan and waived her rights to resolve disputes other than through arbitration. Robinett did not sign the Agreement.

On August 5, 2002, Robinett was injured on the job. She sought benefits from Senior Living but was denied. She alleged that she attempted to appeal that denial but that Senior Living refused to process her claim. In August 2005, Robinett sued Senior Living, asserting claims for negligence and breach of contract by Senior Living's refusal to pay benefits. Robinett stated that Senior Living "was not a subscriber to the Texas Workers Compensation Insurance Program. As part of her agreement of employment with [Senior Living], Plaintiff is entitled to all benefits as described in the 'Associate/Employee Protection Plan' provided to her by" Senior Living.

Senior Living filed a plea in abatement, asserting that Robinett was obligated to resolve her dispute through mediation and arbitration, rather than the court system. Robinett disputed that a valid arbitration agreement existed, arguing that the March arbitration agreement

2

applied only while she was an hourly employee and did not carry over when she changed employment status. Because she did not sign anything when her status changed, she argued that she was not bound by the arbitration agreement. The trial court conducted a hearing and overruled Senior Living's plea, finding no evidence that an arbitration agreement existed at the time Robinett was injured; trial was set for October 30. Senior Living then filed its petition for writ of mandamus.[1]

### Discussion

Mandamus is appropriate only to correct a clear abuse of discretion and where the party seeking relief has no adequate remedy at law. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002). Mandamus relief is proper when a trial court wrongly denies arbitration under the Federal Arbitration Act. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005). If a valid arbitration agreement exists and encompasses the claims raised in the suit, the trial court has no discretion but to stay its proceedings and compel arbitration. *J.D. Edwards*, 87 S.W.3d at 549. There is a strong presumption in favor of arbitration, but that presumption arises only after the party seeking to compel arbitration establishes the existence of a valid arbitration agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Senior Living urges two bases for arbitration: (1) the arbitration agreement signed by Robinett in March 2002 shortly after she began her employment, and (2) the Agreement contained

---

[1] Senior Living also filed a motion for emergency relief. We granted temporary emergency relief, staying the trial setting until we resolved Senior Living's petition for writ of mandamus.

in the Summary Plan Description. Robinett argues that she should not be bound by the March arbitration agreement because it is an incomplete and therefore invalid contract and because there was a failure of consideration that rendered it invalid. Robinett argues that the second arbitration agreement is invalid because she did not sign it.

Both the March arbitration agreement and the Summary explain that Senior Living is a nonsubscriber under the Texas Workers' Compensation Act and instead provides its own Employee Injury Benefit Plan. The March agreement recites that Robinett "received a copy of the Summary Plan Description of the Plan," and refers to "Section IX of the Summary Plan Description" as setting forth the arbitration procedures. The Summary states that all employees of Senior Living are participants in the Associate/Employment Protection Plan and that participation begins upon employment and continues until termination of employment or of the Plan. Section IX of the Summary explains that if a participant is dissatisfied with the Plan's claim process, her "sole remaining remedy shall be to arbitrate the claims," and goes on to describe the mediation and arbitration procedure to be applied. The Summary concludes with an Enrollment and Arbitration Agreement providing that "[b]y signing this Enrollment and Arbitration Agreement," the employee agreed to waive her legal rights and resolve claims through mediation and arbitration instead. The Agreement also states: "I agree that each and every time that I receive Plan benefits, or have Plan benefits paid to a medical provider on my behalf, I ratify and reaffirm this Agreement the same as if I had signed this Agreement again on the date the benefits were paid." The Agreement is not signed by Robinett. This, she argues, means that she is not bound by the arbitration clause.

4

Whether an arbitration agreement is a valid contract is determined under traditional contract principles. *Id.*; *see AdvancePCS Health*, 172 S.W.3d at 606. A party's signature is relevant to determining whether a contract is binding on the parties, *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, orig. proceeding), but generally is not a necessary element of a valid contract. *AdvancePCS Health*, 172 S.W.3d at 606; *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 292 (Tex. App.—Corpus Christi 2003, pet. denied). If the parties unconditionally assent to terms set out in a document, that document amounts to a binding contract even if it is not signed. *Bunzl USA*, 155 S.W.3d at 209 (citing 1 Arthur Linton Corbin, Corbin on Contracts § 2.10, at 168 (Joseph M. Perillo rev., 1993)). Without a party's signature, the proponent of the alleged contract must produce other evidence to prove the contract's validity. *Id.*

A non-signatory, even if not a party to the contract in question, "may be compelled to arbitrate 'if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions.'" *In re Weekley Homes, L.P.*, 176 S.W.3d 740, 743 (Tex. 2005) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 741 (Tex. 2005)); *see In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001) ("a litigant who sues based on a contract subjects him or herself to the contract's terms"); *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 520 (Tex. App.—Austin 1998, no pet.) ("While attempting to enforce the terms of the sales contract, Sherry cannot pick and choose which provisions apply; she is bound by all the contract terms."). Whether a claim is brought on a contract depends on the substance of the claim, not artful pleading, and whether the alleged

5

liability arises "solely from the contract or must be determined by reference to it." *Weekley Homes*, 176 S.W.3d at 743.

Robinett sued Senior Living, alleging that she was "entitled to all benefits as described in the 'Associate/Employee Protection Plan' provided to her by" Senior Living and that Senior Living had breached its contract with her by "failing to pay damages including medical expenses related to her injuries and lost wages." In other words, the basis of Robinett's claims is that Senior Living failed to pay her benefits owed under the Plan—the same Plan containing the Arbitration Agreement that she urges should not be construed as valid. Robinett's claims that Senior Living breached its obligations to pay benefits under the Plan are surely encompassed by the Arbitration Agreement. By suing on the contract for Plan benefits, Robinett subjected herself to the terms of the Plan, including the agreement to settle claims through arbitration.[2] *See FirstMerit Bank*,

---

[2] Further, Robinett signed the March arbitration agreement, which we believe refers to the same benefits plan as the Summary Plan Description. Both documents explain that Senior Living is a nonsubscriber to the Workers' Compensation Act and provides its own benefits plan, described in the Summary. The March arbitration agreement refers to the Summary, including specific reference to Section IX, which describes the arbitration procedures to be followed. The March arbitration agreement's reference to "Section I, Paragraph B" does not refer to the Summary, as Robinett asserts. Instead, the March agreement states that the arbitration procedures are described in the Summary and in "Section I, Paragraph B of the Plan." In other words, the arbitration procedures are set out both in the Summary and in the Plan itself.

The fact that the March arbitration agreement was copyrighted in 2000 whereas the Summary was copyrighted in 2001 does not mean that they do not refer to the same benefits plan. The documents appear to be form documents created by third parties and tailored to Senior Living's needs. That Senior Living obtained an updated Summary from a new company does not render the earlier arbitration agreement void. According to the Summary, the Plan originated on January 21, 2001, and the March agreement and the Summary were drafted well before Robinett was hired.

Robinett also argues that the March agreement is void due to a lack of consideration. It is true that Robinett was required to sign the agreement after she had already started work. However,

52 S.W.3d at 755; *see also Weekley Homes*, 176 S.W.3d at 745 ("[W]hen a nonparty consistently and knowingly insists that others treat it as a party, it cannot later 'turn[] its back on the portions of the contract, such as an arbitration clause, that it finds distasteful.' A nonparty cannot both have his contract and defeat it too.") (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)) (footnotes omitted); *Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd.*, 147 S.W.3d 507, 512-13 (Tex. App.—San Antonio 2004, no pet.) ("[T]he nonsignatory's claim must seek to enforce the terms of the written agreement containing the arbitration provision in order for the nonsignatory to be bound to arbitrate. The nonsignatory cannot enforce specific terms of the agreement while seeking to avoid the arbitration provision.") (citations omitted).

Finally, although Robinett asserts a claim of negligence as well as breach of contract, her tort claim is based on the same factual allegations as the breach of contract claim. In determining whether a tort claim falls within an arbitration agreement, we look to the factual allegations made in the complaint rather than focusing on the legal causes of action asserted. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995). Texas courts apply one of two tests in deciding whether a tort claim is encompassed by an arbitration agreement. *See Dennis v. College Station*

continued employment was not the consideration on which the agreement was based. Instead, the agreement states that both Robinett and Senior Living mutually agreed to arbitrate any disputes that arose between them and that it could be revoked or modified only through mutual, written consent. Therefore, the contract is not based on an illusory promise of continued employment and is not void for want of consideration. *See In re Halliburton Co.*, 80 S.W.3d 566, 569-70 (Tex. 2002).

7

*Hosp., L.P.*, 169 S.W.3d 282, 285-86 (Tex. App.—Waco 2005, pet. denied). The "close view,"
usually applied to cases involving arbitration agreements with narrow language, holds that if a tort
claim is so interwoven with a contract that it cannot stand alone, it will be held to fall within the
contractual arbitration agreement; if the tort claim "is completely independent of the contract and
could be maintained without reference to the contract," it will fall outside the arbitration agreement.
*Associated Glass*, 147 S.W.3d at 513; *see In re Kirby Highland Lakes Surgery Ctr., L.L.P.*, No.
03-05-00502-CV, 2006 Tex. App. LEXIS 334, at *16 n.7 (Tex. App.—Austin Jan. 13, 2006, orig.
proceeding). A broader standard, similar to the federal approach and applied to agreements with
broad language,[3] asks whether the alleged facts touch on, have a significant relationship to, are
enmeshed or intertwined with the contract; if so, the tort claim will be arbitrable. *Dennis*, 169
S.W.3d at 285 (quoting *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App.—San
Antonio 2000, no pet.)); *see Kirby*, 2006 Tex. App. LEXIS 334, at *16 n.7 (comparing "close" view
set out in *Associated Glass* with federal standard applied in *Dennis*). "A broad arbitration clause
gives rise to a presumption in favor of arbitration," and "[a]ny doubt as to whether a dispute falls
within the scope of an arbitration clause is resolved in favor of arbitration." *In re Sun
Communications*, 86 S.W.3d 313, 318 (Tex. App.—Austin 2002, orig. proceeding) (citing *AT & T*

---

[3] The Employee Protection Plan, which contains the arbitration agreement in question, refers to
arbitration several times. Early in the document, it states that a Plan participant agrees "to submit
to binding arbitration [of] all types of disputes, differences or claims that may arise" between the
participant and Senior Living, regardless of whether the dispute is related to the participant's
employment. The "Enrollment and Arbitration Agreement" at the end of the document provides that
the parties will arbitrate "any and all . . . differences (including any on-the-job injury claims)."

*Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Under either standard, Robinett's tort claims fall within the arbitration agreement here. Robinett asserts that Senior Living's negligence caused her injuries. However, those injuries were allegedly incurred in the course and scope of her employment. The contract in question is the Employee Protection Plan, the handbook provided by Senior Living that describes an employee's rights if injured on the job and uses broad language in reference to arbitration of disputes. Any harm suffered by Robinett due to Senior Living's alleged negligence arose out of her status as an employee. Resolving doubts in favor of arbitration, *see Sun Communications*, 86 S.W.3d at 318, we hold that Robinett's negligence claim falls within the arbitration agreement. *See Dennis*, 169 S.W.3d at 284-85; *Associated Glass*, 147 S.W.3d at 513.

## Conclusion

Assuming that the March arbitration agreement was superceded by a new benefits package for salaried employees, Robinett's claims relate to Senior Living's alleged failure to provide benefits under the Plan, as described in the Summary, which explicitly and clearly states that participants of the Plan must arbitrate any disputes. By suing for benefits under the Plan, Robinett bound herself to the Plan's terms, as set out in the Summary and its incorporated arbitration agreement. *FirstMerit Bank*, 52 S.W.3d at 755. Robinett's tort claim falls within the arbitration agreement and thus is also subject to arbitration. *See Dennis*, 169 S.W.3d at 284-85; *Associated Glass*, 147 S.W.3d at 513.

We conditionally grant the writ of mandamus with instructions for the trial court to abate the proceedings and require Robinett to mediate and arbitrate her dispute with Senior Living according to the terms of the Summary.  Writ will issue only in the unlikely event that the trial court does not act in accordance with this opinion.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Filed:   March 27, 2006