ACCEPTED
02-17-00416-CV
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
12/21/2017 12:23 PM
DEBRA SPISAK
CLERK

No. 02-17-00416-CV

In the Court of Appeals for the Second District in Fort Worth, Texas

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS
12/21/2017 12:23:50 PM
DEBRA SPISAK
Clerk

Diligent Texas Dedicated, LLC d/b/a Diligent Delivery Systems,

*Appellant,*

v.

Richard York, Elite Parts Group, LLC d/b/a Elite Parts Group
and Principle Distribution, Inc.

*Appellees.*

On Appeal from the 342nd Judicial District Court, Tarrant County, Texas

**BRIEF OF APPELLANT**

Maurice Bresenhan, Jr.
State Bar No. 02959000
mbresenhan@zbplaw.com
Pascal Paul Piazza
State Bar No. 15966850
ppp@zbplaw.com
Cynthia Keen Perlman
State Bar No. 11161700
CPerlman@zbplaw.com
Zukowski, Bresenhan & Piazza, L.L.P.
1177 West Loop South, Suite 1100
Houston, Texas 77027
(713) 965-9969/(713) 963-9169 (Fax)
**Attorneys for Appellants**

**Oral Argument Requested**

1

# IDENTITY OF PARTIES AND COUNSEL

Appellant: <u>Diligent Texas Dedicated, LLC d/b/a Diligent Delivery Systems</u>

Trial/Appellate
Counsel:

Maurice Bresenhan, Jr.
State Bar No. 02959000
mbresenhan@zbplaw.com
Pascal Paul Piazza
State Bar No. 15966850
ppp@zbplaw.com
Cynthia Keen Perlman
State Bar No. 11161700
CPerlman@zbplaw.com
Zukowski, Bresenhan & Piazza, L.L.P.
1177 West Loop South, Suite 1100
Houston, Texas 77027
(713) 965-9969/(713) 963-9169 (Fax)

Appellees: <u>Richard York and Elite Parts Group, LLC d/b/a Elite Parts Group</u>

Trial/Appellate
Counsel:

S. Gary Werley
Law Offices of S. Gary Werley
1840 Acton Highway, Suite 102
Granbury, TX 76049
(817) 573-7700/(817) 573-7710 (Fax)

Appellee: <u>Principle Distribution, Inc.</u>

Trial/Appellate
Counsel:

Russell A. Devenport
McDonald Sanders, P.C.
777 Main Street, Suite 1300
Fort Worth, Texas 76102
(817) 336-8651/(817) 334-0271

# TABLE OF CONTENTS

BRIEF OF APPELLANT ......................................................................................1

IDENTITY OF PARTIES AND COUNSEL ........................................................2

TABLE OF CONTENTS.....................................................................................3

INDEX OF AUTHORITIES................................................................................5

TABLE OF PRINCIPAL ABBREVIATIONS ....................................................8

STATEMENT OF THE CASE.............................................................................9

STATEMENT REGARDING ORAL ARGUMENT ...........................................10

ISSUES PRESENTED.........................................................................................11

BRIEF OF APPELLANT ....................................................................................13

   *Summary of the Argument* ..........................................................................14

   *Standard of Review* ....................................................................................17

   *Background Facts/Course of Proceedings*..................................................20

   *Analysis Under All Points of Error* ...........................................................27

   *Conclusion and Prayer* ..............................................................................53

CERTIFICATE OF SERVICE ............................................................................54

CERTIFICATE OF COMPLIANCE....................................................................55

Appendices:

**Appendix 1**  Order on Plaintiff's Motion to Compel and Motion to Abate entered November 9, 2017

**Appendix 2**  Temporary Injunction entered on November 9, 2017

**Appendix 3**  Diligent Delivery Systems Employee Confidentiality and Business Preservation Agreement

**Appendix 4**  AAA Commercial Rules, Rule R-7

**Appendix 5**  Notice of Past Due Findings of Fact and Conclusions of Law filed December 13, 2017

**Appendix 6**  Affidavit of Service upon Principle Distribution, LLC

**Appendix 7**  Affidavit of Service upon Richard York

**Appendix 8**  Affidavit of Service upon York Elite Parts Group d/b/a Elite Parts Group

# INDEX OF AUTHORITIES

**Cases**

*BBVA Compass Inv. Solutions, Inc. v. Brooks,*
  456 S.W.3d 771,718 (Tex. App. – Fort Worth 2017, no pet.) .............................30

*Bryan v. Gordon*,
  384 S.W.3d 908 (Tex. App. – Houston [14th Dist.] 2012, no pet.) ......................20

*Cell Comp, LLC v. Southwestern Bell Wireless, LLC,*
  2008 Tex. App. LEXIS 4510 (Tex. App. – Corpus Christi 2008, no pet.) ..........52

*City of Keller v. Wilson*,
  168 S.W.3d 802 (Tex. 2004) ..............................................................................20

*City of The Colony v. N. Tex. Mun. Water Dist.*,
  272 S.W.3d 699 (Tex. App. – Fort Worth 2008, pet. dism'd) .............................52

*CMH Homes v. Perez*,
  340 S.W.3d 444 (Tex. 2011) ..............................................................................17

*Dargahi v. Handa*,
  2017 Tex. App. LEXIS 10373 (Tex. App. – Austin 2017, no pet) ......... 29, 31, 45

*Dow Roofing Systems, LLC v. Great Commission Baptist Church*
*& Chamberlin Dallas, LLC*,
  2017 Tex. App. LEXIS 7370 ** 7-8, 17-20 (Tex. App. – Fort Worth
  2017, pet. for review filed) ................................................................................28

*EMS USA, Inc. v. Shary*,
  309 S.W.3d 653, 657 (Tex. App. – Dallas  2010, no pet.) ........................... 41, 48

*Geo-Tech Foundation Repair v. Leggett*,
  2017 Tex. App. LEXIS 2765 (Tex. App. – Fort Worth 2017, no pet.)........ passim

*Haddock v. Quinn*,
  287 S.W.3d 158 (Tex. App. – Fort Worth 2009, pet. denied)..................... passim

*Holmes v. Graves*,
   2013 Tex. App. LEXIS 14816  (Tex. App. – Houston [1st Dist.]
   2013, no pet) ...................................................................................... 45, 46

*In Re Coppola*,
   61 Tex. Sup. Ct. J. 170 (December 15, 2017) ......................................................18

*In Re Merrill Lynch Trust Co., FSB*,
   235 S.W.3d 185 (Tex. 2007) ...................................................... 19, 32, 44, 50

*Joseph Chris Personnel Services, Inc. v. Rossi*,
   249 Fed. Appx. 988, 991-992 (5th Cir. 2007 ......................................................31

*Legoland Discovery Centre (Dallas), LLC v. Superior Builders, LLC*,
   2017 Tex. App. LEXIS 3843 (Tex. App. – Fort Worth 2017, no pet.)........ passim

*McCullough v. Ferrell*,
   2005 Tex. App. – Fort Worth 2005, no pet.)........................................................18

*McQueen v. Chevron Corp.*,
   2017 U.S. Dist. LEXIS 207705 * 4-5 (N.D. Cal. December 18, 2017.)..............39

*Menna v. Romero*,
   48 S.W.3d 247, 252-253 (Tex. App. San Antonio 2001, no pet.)........................31

*Michiana Easy Livin' Country, Inc. v. Helton*,
   168 S.W.3d 777 (Tex. 2005) ...............................................................................18

*Otis Elevator Co. v. Parmelee*,
   850 S.W.2d 179 (Tex. 1993) ........................................................................ 18, 19

*PMS Distributing Co. v. Huber & Suhner, A.G.*,
   863 F.2d 639, 641-641 (9th Cir. 1988);...............................................................31

*Rio Grande Xarin, II, Ltd. v. Wolverine Robstown, LP*,
   2010 Tex. App. LEXIS 5189 ** 22-23 (Tex. App. – Corpus
   Christi 2010,  pet. dism'd.)...................................................................................34

*RSL Funding, LLC v. Pippins*,
   499 S.W.3d 423 (Tex. 2016) ...................................................... 29, 31, 42, 45

*RSM Prod. Corp. v. Global Petroleum Grp., Ltd.*,
   507 S.W.3d 383 (Tex. App. – Houston [1st Dist.] 2016, pet. denied)................52

*Rugen v. Interactive Business Svs.*,
   864 S.W.2d 548 (Tex. App. – Dallas  1993, no pet.)...........................................52

*Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*,
   2017 Tex. App. LEXIS 8728 ** 6-9 (Tex. App. – Corpus Christi
   2017, no pet.).......................................................................................................28

*Tranter, Inc. v. Liss*,
   2014 Tex. App. LEXIS 3398 * 4 (Tex. App. – Fort Worth 2017, no pet.)..........43

*Zep Mfg. Co. v. Harthcock*,
   824 S.W.2d 642 (Tex. App. – Dallas  1992, no pet.)...........................................52

**Statutes**

9 U.S.C.A. § 3 .......................................................................................... 44, 50

TEX. CIV. PRAC. & REM CODE §§ 134A.002, 143A.004, 134A007.........................52

TEX. CIV. PRAC. AND REM CODE  §§ 171.025 and 172.174 ............................. 44, 50

**TABLE OF PRINCIPAL ABBREVIATIONS**

| | |
|---|---|
| (date xCR y-z) | (Date Volume of Clerk's Record, page(s)) |
| (date RR pp.) | (Date Reporter's Record, page (s)) |
| Diligent | Diligent Texas Dedicated, LLC d/b/a Diligent Delivery Systems |
| York | Richard York |
| Elite | Elite Parts Group, LLC d/b/a Elite Parts Group |
| PDL | Principle Distribution, Inc. |

## STATEMENT OF THE CASE

*Nature of the Case:*

This is a breach of contract, non-competition, tortious interference with contract, and misappropriation of trade secrets case.

*Trial Court:*

Judge Wade Birdwell was the trial judge. He has since resigned to accept a position on this Court. Judge Dana Womack has succeeded to Judge Birdwell at this time.

*Course of Proceedings:*

This is an accelerated, interlocutory appeal because the Trial Court refused to compel arbitration and to stay all further proceedings before the Trial Court pending the resolution of the arbitration.

*Trial Court's Disposition:*

Trial Court refused to compel arbitration and to stay all further proceedings before the Trial Court pending the resolution of the arbitration. The Trial Court further denied the jurisdictional plea to allow the arbitrator to decide issues of arbitrability.

*Procedural Posture Pending Appeal:*

Diligent has asked the Trial Court to stay the case pending this appeal. That motion in the Trial Court is scheduled for December 21, 2017. Diligent timely filed a request for Findings of Fact and Conclusions of Law and then, on December 13, 2017, Diligent filed a Reminder for Making Findings of Fact and Conclusions of Law. York, Elite and PDL have scheduled hearings on their respective summary judgment motions in the Trial Court on January 18, 2018. This case is set for trial on January 22, 2018.

## STATEMENT REGARDING ORAL ARGUMENT

This appeal concerns fundamental issues involving the critical interplay between the complementary and conflicting roles of arbitration and trial proceedings. Diligent respectfully submits that oral argument would aid the Court's decision-making and protection of fundamental due process principles.

## ISSUES PRESENTED

1. **The Trial Court committed reversible error when it denied Diligent's verified motion to compel arbitration and to stay all proceedings and Diligent's plea-to-the jurisdiction (App. 1).**

   a. Under the *de novo* standard or the abuse of discretion standard, the Trial Court had to give full effect to, but failed to give such effect to, the complementary delegation of plenary jurisdiction to the Arbitrator to decide issues of arbitrability and to the Trial Court to grant injunctive relief and even to reform the restrictive covenants as part of the overall arbitration protocols (App. 1).

   b. Under the *de novo* standard or the abuse of discretion standard, the Trial Court could not decide the issues of arbitrability, including, without limitation, the question of whether Diligent waived the right to arbitrate in a manner inconsistent with the right to arbitrate to the prejudice of York. (App. 1).

   c. Alternatively, under the *de novo* standard or the abuse of discretion standard, the Trial Court had to give full effect to, but failed to give such effect to, the plain terms of the arbitration provision which mandated the arbitration of all claims before the Trial Court between Diligent and York (App. 1).

   d. Alternatively, under the *de novo* standard or the abuse of discretion standard, the Trial Court had to give full effect to, but failed to give such effect to, the presumption against the waiver of the right to arbitrate, the heightened burden to overcome such presumption, and the threshold test that waiver of the right to arbitrate requires a substantial invocation of the judicial process before the Trial Court, with the express or implied intent to act inconsistently with Diligent's right to arbitrate to the prejudice of York (App. 1).

   e. Alternatively, under the abuse of discretion standard, the Trial Court abused its discretion when it found that Diligent had waived the right to arbitrate (App. 1).

11

f.      Alternatively, under the *de novo* standard or the abuse of discretion standard, the Trial Court had to stay, but failed to stay, all proceedings before the Trial Court until the resolution of the arbitration (App. 1).

No. 02-17-00416-CV

---

In the Court of Appeals for the Second District in Fort Worth, Texas

---

Diligent Texas Dedicated, LLC d/b/a Diligent Delivery Systems,

*Appellant,*

v.

Richard York, Elite Parts Group, LLC d/b/a Elite Parts Group
and Principle Distribution, Inc.

*Appellees.*

---

On Appeal from the 342nd Judicial District Court, Tarrant County, Texas

---

**BRIEF OF APPELLANT**

---

Appellant Diligent Texas Dedicated, LLC d/b/a Diligent Delivery Systems files this accelerated, interlocutory appeal challenging the Trial Court's failure to compel arbitration of the claims between Diligent and York and to stay all further proceedings in the Trial Court pending the resolution of the arbitration (App. 1).

## Summary of the Argument

In this protection of trade secrets case, Diligent has to ask this Court to intervene, now on an accelerated, interlocutory basis or alternative mandamus basis, to reverse the pre-arbitration and pretrial decision by the Trial Court refusing to compel arbitration, precluding the arbitrator from deciding all questions of arbitrability (including, without limitation, any waiver of the right to arbitrate), and refusing to stay all proceedings in the Trial Court pending a resolution of the arbitration. The sanctity of the arbitration provision and the value of Diligent's vested property rights hang in the balance.

This Court has repeatedly charted the roadmap for the resolution of the issues in this appeal with distinct features. Arbitration is a creature of contract and is a favored remedy. Diligent, the former employer, and York, the former employee, had the freedom to draft the details of the arbitration provision in the employment agreement. The plain terms of the arbitration provision control so Diligent and York could dictate that the arbitrator has the jurisdiction to decide issues of arbitrability (including, without limitation, issues of waiver), Diligent could ask for a temporary injunction in the Trial Court and also seek thereafter to arbitrate, and the arbitrator or the Trial Court could amend the restrictions in the employment agreement if Diligent and York so agreed (as they did so agree).

As a result, Diligent could sue, and did sue, York, and later Elite and PDL, for breach of contract, tortious interference and misappropriation of trade secrets, respectively, asking for a temporary injunction, but preserving the right to arbitrate after the issuance or denial of a temporary injunction. Based upon those plain terms and this Court's guidance, the Trial Court had to rule on the request for a temporary injunction, and then compel arbitration and stay all proceedings in the Trial Court until the arbitration completed.

The Trial Court followed the first required step. It granted a temporary injunction, but that process lasted almost one year.

The Trial Court then did not follow the next required steps. Rather, it denied Diligent's plea-to-the-jurisdiction to allow the arbitrator to decide all issues of arbitrability as the parties had agreed. It denied Diligent's motion to compel arbitration and to stay the remainder of the proceedings in the Trial Court.

The Trial Court decided the jurisdictional plea and the arbitration motion based solely upon a finding that Diligent had waived the right to arbitrate by asking for a temporary injunction even though Diligent and York had agreed that Diligent had the right to seek temporary injunctive relief and then arbitrate as provided by the plain terms of the arbitration provision. The Trial Court did not decide the jurisdictional plea or the motion to stay on the respective merits of those

claims.  Instead, it found a waiver of the right to arbitrate even though it did not have the power to make that finding.

Alternatively, the Trial Court found that Diligent had waived the right to arbitrate when the Trial Court could not do so.  It failed to cite to or follow the existing presumption against any such waiver and the equally high burden on York, Elite and PDL to try to overcome that burden.   It failed to follow the standards established by this Court to meet this heightened burden, York, Elite and PDL had to show that Diligent unequivocally intended to waive the right to arbitrate and that Diligent acted inconsistently with the right to arbitrate when it asked for a temporary injunction.

Based upon its own substituted non-standard, the Trial Court found that Diligent did not intend to arbitrate even though it acknowledged that Diligent repeatedly said that it intended to try all arbitrable claims after the Trial Court ruled on the temporary injunction.  It found that the right to ask for a temporary injunction was not aligned with the right to arbitrate even though it conceded that both rights were mentioned in the same arbitration provision.  It considered facts without following the established law or the plain text of the arbitration provision. It cannot explain how there could be waiver under the facts when reviewed under the presumption against waiver, the higher burden to try to overcome that presumption or the rulings of this Court.

The Trial Court could not rule as it did. It denied Diligent its arbitration rights. It forces Diligent to try claims without the right to arbitrate or the right to stay all proceedings in the Trial Court until the completion of the arbitration. The Court should reverse the Trial Court and/or issue a writ of mandamus as necessary.

**Standard of Review**

This Court reviews or considers *de novo* the determination by the Trial Court whether the courts or the arbitrator has the jurisdiction to decide questions of arbitrability. [1] This Court should consider this issue as part of this accelerated, interlocutory appeal, but this Court should consider such matter under a mandamus review if that issue may not be reviewed as part of this accelerated, interlocutory appeal. [2]

The Court applies an abuse of discretion standard of review for any requested mandamus relief. [3] This Court should grant mandamus relief to correct a clear abuse of discretion (i.e., when the Trial Court failed to follow established law and/or acted in a manner that the Trial Court could not so act) and when there is no adequate remedy by appeal. [4] There is no adequate remedy by appeal when a party is erroneously denied its contracted-for arbitration rights (compelling arbitration and staying the lawsuit pending the outcome of the arbitration) since the denial of

---

[1] CMH Homes v. Perez, 340 S.W.3d 444, 447 (Tex. 2011)
[2] Id. at 451-453.
[3] Id.
[4] Id.

those rights would skew the proceedings, potentially affecting the outcome of the litigation and compromising the presentation of the lawsuit in ways unlikely to be apparent in the appellate record. [5]

Generally, this Court reviews the denial of a motion to compel arbitration under an abuse of discretion standard as applied to the presumption against waiver of the right to arbitrate and the accompanying higher burden of proof to show any such waiver. [6] When, as in this case however, it is undisputed that there is a written arbitration provision and the claims between Diligent and York fall within the scope of that provision, this Court conducts a *de novo* review whether York established the defense of waiver of the right to arbitrate. [7] The Court also conducts such a *de novo* review when, as in this case, the Trial Court considered the motion and the jurisdictional plea on the Clerk's Record without the receipt of evidence. [8] In that case, there is no presumption of any fact-findings in favor of the rulings of the Trial Court in the absence of Findings of Fact and Conclusions of Law. [9] If the abuse of discretion standard applies, then the Trial Court abused its discretion

[5] Id. at 452; In Re Coppola, 61 Tex. Sup. Ct. J. 170, 173 (December 15, 2017).
[6] Legoland Discovery Centre (Dallas), LLC v. Superior Builders, LLC, 2017 Tex. App. LEXIS 3843 * 6 (Tex. App. – Fort Worth 2017, no pet.).
[7] Legoland Discovery Centre (Dallas), LLC v. Superior Builders, LLC, 2017 Tex. App. LEXIS 3843 * 6 (Tex. App. – Fort Worth 2017, no pet.)
[8] Michiana Easy Livin' Country, Inc. v. Helton, 168 S.W.3d 777, 782 (Tex. 2005); McCullough v. Ferrell, 2005 Tex. App. – Fort Worth 2005, no pet.)
[9] Otis Elevator Co. v. Parmelee, 850 S.W.2d 179, 181 (Tex. 1993).

when it refused to compel arbitration under a valid and enforceable arbitration provision. [10]

The Court reviews the refusal to stay the claims between Diligent, on one hand, and Elite and PDL, on the other hand, under an abuse of discretion standard.[11] This Court conducts a *de novo* review to determine whether the Trial Court abused its discretion when it failed to stay these claims when those claims involve issues to be decided by the arbitrator in the arbitration with York. [12]

Alternatively, as noted above, this Court is to decide this appeal based upon its *de novo* review without attributing any implied fact-findings to support the rulings of the Trial Court. [13] Nonetheless, Diligent requested the Trial Court to make Findings of Fact and Conclusions of Law to preclude any argument that this Court may infer that the Trial Court made favorable findings that the Trial Court did not make because Diligent did not request the Trial Court to make such fact-findings and legal-conclusions. [14]

Alternatively, if the traditional evidentiary standards of review apply to the evidence in the Clerk's Record (which Diligent asserts they do not), then there is no evidence if a reasonable fact-finder could not find a fact based upon the

---

[10] Geo-Tech Foundation Repair v. Leggett, 2017 Tex. App. LEXIS 2765 * 5 (Tex. App. – Fort Worth 2017, no pet.).

[11] In Re Merrill Lynch Trust Co., FSB, 235 S.W.3d 185, 195-196 (Tex. 2007).

[12] Id.

[13] See discussion at footnote 8.

[14] Parmelee, 850 S.W.2d at 181.

19

undisputed evidence, and the facts supporting the fact-finding as reviewed under the presumption against waiver of the right to arbitrate and the accompanying higher burden of proof to show any such waiver. There is insufficient evidence if the fact-finding is so against the great weight of the credible evidence that it is manifestly unjust or wrong as reviewed under the presumption against waiver of the right to arbitrate and the accompanying higher burden of proof to show any such waiver. [15]

**Background Facts/Course of Proceedings**

*The Arbitration Provision in the Agreement Between Diligent and York*

Around October 27, 2015, Diligent, as the Employer, and York, as the Employee, entered into the "Diligent Delivery Systems Employee Confidentiality and Business Preservation Agreement" (the "Agreement") (App. 3). The Agreement defined expansive proprietary "Confidential Information" (¶ 2) which York was not to divulge or use to the detriment of Diligent (¶ 3) and which York was to hold in the strictest confidence (¶ 3)(App. 3). Not surprisingly, for two years after the end of his employment, York further could not solicit Diligent's customers (¶ 5), could not associate in any manner with any business venture offering the same or similar services as Diligent (¶ 5), could not compete with

---

[15] City of Keller v. Wilson, 168 S.W.3d 802, 814-815 (Tex. 2004); Bryan v. Gordon, 384 S.W.3d 908, 912 (Tex. App. – Houston [14th Dist.] 2012, no pet.)

Diligent (¶ 5), could not poach employees of Diligent (¶ 5), and had to notify Diligent of any new employer of York (¶ 11)(App. 3).

The Agreement, in turn, stated:

> This Agreement and its interpretation and enforcement shall be governed by the laws of the State of Texas without the application of its choice of law rules. If there is any dispute about or involving [York] and [Diligent], both [York] and [Diligent] agree to personal jurisdiction and venue in the state and federal courts of the United States in Harris County, Texas. **Either [York] or [Diligent] may demand any dispute between [York] and [Diligent] must be settled by arbitration utilizing the dispute resolution procedures of the American Arbitration Association (AAA) (Commercial Rules) only in Harris County, Texas; provided, however, that the foregoing shall not prevent [Diligent] from seeking injunctive relief in a court of competent jurisdiction ….**

(¶ 9)(App. 3)(emphasis added).

The right to arbitrate integrated one of the remedies granted under the Agreement to enforce the restrictive covenants protecting the Confidential Information of Diligent, namely, the right to seek a temporary injunction in a court of competent jurisdiction (¶¶ 6 and 9) (App. 3). The complementary rights of arbitration and judicial injunction also included the following right of Diligent under the Agreement: "… [i]f any of the above-noted restrictions are ever determined **as of the date of enforcement [by a temporary injunction]** to be unlawful or unreasonable, then in such event, the covenants hereinabove which restrict [York's] activities **shall be amended**, by the Court or by the Arbitrator having jurisdiction over the parties' dispute, to provide that such restrictions shall

21

apply for the maximum time and geographic scope permitted by applicable law."
(¶6)(App. 3) (emphasis added).

In the Agreement, Diligent and York, as they could as parties to their arbitration provision, established the jurisdiction of the courts to grant temporary injunctive relief and to amend the restrictive covenants (¶¶ 6 and 9)(App. 3) and the jurisdiction of the arbitrator to determine all other issues of arbitrability and the dispute between Diligent and York (¶ 9)(App.3)(Rule R-7 of the AAA Commercial Rules)(App. 4). More importantly, they could establish the right to seek a temporary injunction and to enforce the restrictive covenants as consistent with and complementary to the right to arbitrate without having to say more than they did. (Id.)

### *York was a Party to Other Agreements*

Prior to the execution of the Agreement, York had signed written employment agreements with restrictive covenants protecting trade secrets with Noble Logistics, Inc. which became NDLI, Inc. (1 CR 489-490, 513-530). Diligent is the successor to NDLI, Inc. (Id.)

### *York's Post-Employment Conduct Requires Diligent to File Suit to Seek Temporary Injunctive Relief as Part of the Consistent and Complementary Rights to Seek Temporary Injunctive Relief and the Right to Arbitrate.*

On December 8, 2016, Diligent sued York for breach of the restrictive covenants of the Agreement and the NDLI Contract, and misappropriation of trade

secrets in support of the request for the issuance of a temporary injunction (1 CR 8, 11-15). Diligent expressly stated:

- that Diligent filed the petition with its intention not to prejudice Diligent's right to assert its claims through arbitration," (1 CR 8); and

- that Diligent intends to compel arbitration **upon entry of a temporary injunction** and will seek to recover all remedies asserted herein, excluding a temporary injunction, in the arbitration proceedings." (1 CR 13) (emphasis added).

Diligent invoked its right to file suit against York consistent with arbitrating the ultimate claims (¶ 9)(App. 3).

> *Diligent's Journey Leading to Entry of the Temporary Injunction Would Last Almost One Whole Year.*

Beginning on December 8, 2016 (1 CR 8) and ending with the entry of the temporary injunction against York on November 9, 2017 (App. 2), Diligent sought the entry of that temporary injunction (1 CR 8, 37, 92, 334, 487).

During that time:

1. Diligent amended its petition four times, ultimately adding Elite and PDL (1 CR 40-4, 96-100, 343-349, 487, 341-349, 495-504). In each petition, **Diligent reaffirmed that Diligent acted without prejudice to the right to arbitrate and that Diligent would move to compel after entry of a temporary injunction (1 CR 37-43, 92, 98-99, 334, 343-345, 347, 487, 495-504);**

2. Diligent pursued the temporary injunction (e.g. Id.; 1 CR 17, 24, 35-37, 43, 109, 129, 139-174, 205, 209, 216-307, 379, 394-395);

3. Diligent deposed York (1 CR 88-91). A representative of Diligent was deposed (1 CR 67-90). Disclosure requests and written discovery were exchanged between Diligent and York (2 CR 595; 3 CR 1022-1023);

23

4. The parties agreed to a form of an agreed protective order (1 CR 24, 35, 36);

5. York, Elite and PDL answered and repeatedly challenged the issuance of the temporary injunction and even the form of the temporary injunction before, during and after each hearing before the Trial Court (e.g. 1 CR 16, 18, 21, 50, 67-91, 107, 126, 203, 322, 325; 2CR 560);

6. On March 23, 2017, the Trial Court conducted a hearing on the application for a temporary injunction, received arguments and evidence, orally notified all counsel of the Trial Court's evaluation of the evidence, took the decision under advisement, and allowed the parties to try to reach some agreement (3-23-17 2 RR 1-93 and 89-93);

7. Thereafter, York, Elite and PDL filed respective repeated motions for summary judgment challenging the claims which underpinned the application for temporary injunction (1 CR 96, 192; 2 CR 542; 585, 611, 618). Diligent responded (e.g. 1 CR 379, 394; 2 CR 825, 1005);

8. On June 23, 2017, the Court convened a hearing on the application for issuance of a temporary injunction (6-23-17 3 RR 1-23). The Court made a rendition of a temporary injunction on the record and asked for a written form of the order to sign. (6-23-17 3 RR at 4-10);

9. On July 12, 2017, July 14, 2017, July 21, 2017 and August 15, 2017, respectively, York, Elite and PDL would not agree to the form of a written temporary injunction order (2 CR 566-584, 590-592, 616-618). York, Elite and PDL, on one hand, and Diligent, on the other hand, filed competing forms of a written temporary injunction order (Id.) Both sides respectively objected, in writing, to the proposed form of written temporary injunction submitted by the opposing side (Id.);

10. The proceedings were interrupted between August 25, 2017 and most of September, 2017, due to the impact of Hurricane Harvey shutting down the offices of counsel for Diligent (2 CR 846); and

11. Diligent set a hearing for October 26, 2017 for the Trial Court to resolve the differences over the form of the written temporary injunction order (10-26-17 4 RR 1.)

On October 10, 2017, Diligent **moved to compel arbitration** as it stated it would do once the entry of the temporary judgment was imminent and as York, Elite and PDL started to push their summary judgment motions (2 CR 714; 1 CR 37, 43, 92,98, 334, 346, 487, 501). Diligent **moved to compel arbitration** of the claims between Diligent and York. (2 CR 714-725). Diligent also **moved to abate** the claims between Diligent, on one hand, and Elite and PDL, on the other hand, pending the resolution of the arbitration (2 CR 726-728). In an amended summary judgment response, on October 19, 2017, Diligent again **moved to abate** the Trial Court's consideration of any summary judgment motions until the completion of the arbitration (2 CR 848).

On October 24, 2017, Diligent filed a verified **plea-to-the-jurisdiction** (2 CR 987). Diligent asked the Trial Court to follow the allocation of jurisdiction that Diligent and York had crafted in the arbitration, temporary injunction and restrictive covenant provisions in the Agreement (2CR 987, ¶¶ 6 and 9 at 993-994).

On October 25, 2017, York and Elite responded to the motion to compel arbitration and to abate and the jurisdictional plea (3 CR 1018). York and Elite claimed that Diligent had waived the right to arbitrate (3 CR 1018-1021). On the same day, Diligent replied to York and Elite's response (3 CR 1024-1028).

On October 26, 2017, the Court deferred the hearing on the pending motions for summary judgment until it ruled on the motion to compel and abate and the jurisdictional plea. (10-26-17 4 RR 20-25).

Between October 31, 2017 and November 9, 2017, Elite moved to sever the claims between Diligent and Elite from the claims between Diligent and York which are covered by the arbitration provisions, and PDL moved to dismiss or sever the claims between Diligent and PDL (3 CR 1072). The parties exchanged pleadings on the pending motions and jurisdictional plea (2 CR 987; 3 CR 1018, 1024, 1029, 1041, 1072, 1081, 1089).

On November 9, 2017, the Trial Court convened a hearing. (11-9-17 5 RR 4-45). The Trial Court signed the temporary injunction for entry (App. 2; 3 CR 1094-1096). It denied the motions and the jurisdictional plea solely based upon its finding that Diligent waived the right to arbitrate (10-26-17 RR at 30). The Trial Court also signed an order denying the motion to compel arbitration and to abate and the jurisdictional plea (App. 1; 3 CR 1097).

*This Accelerated, Interlocutory Appeal Ensued*

On November 20, 2017, Diligent filed a Request for Findings of Fact and Conclusions of Law (3 CR 1106). On December 13, 2017, Diligent filed a Reminder for Making Findings of Fact and Conclusions of Law. (App. 5.)

On November 22, 2017, Diligent perfected this accelerated, interlocutory appeal (3 CR 1110-1117). This appeal ensued.

On November 16, 2017, Diligent posted the bond for the temporary injunction. On November 29, 2017, Diligent requested the issuance of a precept so that the entered temporary injunction could be served on all parties. On December 1, 2017, December 7, 2017, and December 7, 2017, the precept and the temporary injunction were respectively served on PDL, York and Elite, as Diligent seeks to enforce the temporary injunction as signed by the Trial Court. (App. 6, 7 and 8.)

**Analysis Under All Points of Error**

*Introduction*

Under its review, this Court is to apply tenured principles which this Court has been in the forefront in developing. This Court is not writing on a blank slate. Based upon those principles, this Court must reverse the Trial Court.

*Legal Framework*

Jurisdiction

The Court has to first determine whether it (or the Trial Court) or the arbitrator has jurisdiction to consider all issues of arbitrability. [16] As in this case, the parties by contract can allocate the jurisdiction between the courts and the

---

[16] Haddock v. Quinn, 287 S.W.3d 158, 171-173 (Tex. App. – Fort Worth 2009, pet. denied).

27

arbitrator, and did so. [17] As in this case, this can be accomplished by the terms of the Agreement containing the arbitration provision and the incorporation of the Commercial Rules of the American Arbitration Association. [18]

Arbitrability Issue One (if the Courts Have Jurisdiction): Enforceable Arbitration Provision

Diligent, as the party seeking to arbitrate, had to establish the existence of a written arbitration provision and that the disputes to be arbitrated fall within the scope of that provision.[19] Texas law determines the plain meaning of the arbitration provision. [20]

Arbitrability Issue Two (if the Courts Have Jurisdiction): Defenses Including Waiver

Once Diligent shows that there are claims subject to the arbitration provision, then York has to show a defense to arbitration. [21] Waiver of the right to arbitrate is such a defense. [22] In this case, Diligent is not seeking to compel Elite and PDL to arbitrate since their dispute is not subject to arbitration, as opposed to its dispute with York. Therefore, whatever conduct Diligent took regarding its

---

[17] Id.

[18] Id.; Dow Roofing Systems, LLC v. Great Commission Baptist Church & Chamberlin Dallas, LLC, 2017 Tex. App. LEXIS 7370 ** 7-8, 17-20 (Tex. App. – Fort Worth 2017, pet. for review filed); Super Starr Int'l, LLC v. Fresh Tex Produce, LLC, 2017 Tex. App. LEXIS 8728 ** 6-9 (Tex. App. – Corpus Christi 2017, no pet.)

[19] Haddock, 287 S.W.3d at 169.

[20] Id.

[21] Id.

[22] Legoland, 2017 Tex. App. LEXIS 3843 at * 7.

dispute with Elite and PDL is not relevant to the question of whether Diligent waived its arbitration rights with York. [23]

When, as in this case, York, Elite and PDL claim waiver based upon Diligent's participation in the lawsuit, York alone has to show that Diligent with regard to York "(1) … substantially invoked the judicial process – engaged in **conduct inconsistent** with a claimed right to compel arbitration and (2) the **inconsistent conduct** caused York to suffer detriment or prejudice."[24]  Prejudice, in turn, means inherent unfairness in terms of delay, expense or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue. [25]  Waiver may only be based upon **unequivocal conduct** with the **actual intention** to waive the right to arbitrate. [26]

"Because the law strongly favors arbitration, [the burden of York] to prove the defense is a high one." [27]  "So high, in fact, that appellate courts seldom find an

---

[23] RSL Funding, LLC v. Pippins, 499 S.W.3d 423, 431 (Tex. 2016).
[24] Legoland, 2017 Tex. App. LEXIS 3843 at * 7 (emphasis added); Leggett, 2017 Tex. App. LEXIS 2765 at **12-13.
[25] Leggett, 2017 Tex. App. LEXIS 2765 at **13-14.
[26] Dargahi v. Handa, 2017 Tex. App. LEXIS 10373 ** 13-14 (Tex. App. – Austin 2017, no pet).
[27] Legoland, 2017 Tex. App. LEXIS 3843 at * 7.

implied waiver through litigation conduct." [28] Consequently, there is a strong presumption against waiver of the right to arbitrate. [29]

Giving effect to this presumption and the heightened burden of proof, this Court is to consider the totality of the circumstances. [30] This consideration may be guided by several factors, [31] but none of the factors is dispositive. [32]

It must be noted that the parties try to conflate Diligent's litigation conduct with respect to York with Diligent's litigation conduct with respect to Elite and PDL; however, Diligent's conduct with Elite and PDL is not relevant as these disputes are non-arbitrable disputes. Again, whatever conduct Diligent took regarding its dispute with Elite and PDL is not relevant to the question of whether Diligent waived its arbitration rights with York.

When determining whether litigation conduct is indeed **inconsistent** with the right to arbitrate, the courts have found that the following conduct is not **inconsistent** with the right to arbitrate:

- Filing suit; [33]

---

[28] Legoland, 2017 Tex. App. LEXIS 3843 at * 7.

[29] Legoland, 2017 Tex. App. LEXIS 3843 at * 7; Leggett, 2017 Tex. App. LEXIS 2765 at * 11; BBVA Compass Inv. Solutions, Inc. v. Brooks, 456 S.W.3d 771,718 (Tex. App. – Fort Worth 2017, no pet.)

[30] Legoland, 2017 Tex. App. LEXIS 3843 at * 8.

[31] Is Diligent the plaintiff or a defendant? How long did Diligent wait before seeking arbitration? How much discovery or pretrial activity did Diligent conduct before seeking arbitration? Did Diligent ask the Trial Court to dispose of its affirmative claims on the merits? How much time and expense have the parties incurred? Is the discovery conducted unavailable or useful in arbitration?

[32] Legoland, 2017 Tex. App. LEXIS 3843 at * 8.

- Serving requests for disclosure of facts; [34]

- Serving basic written discovery; [35]

- Noticing or taking depositions; [36]

- Pursuing settlement; [37]

- Agreeing to a scheduling order; [38]

- Requesting discovery, noticing depositions and agreeing to a trial setting; [39]

- Incurring attorney's fees to pursue claims against the party asserting arbitration; [40]

- Seeking discovery sanctions or motions to compel discovery; [41]

- Seeking a temporary or preliminary injunction; [42]

- Self-inflicted costs, expenses and fees incurred by the parties because a party opposing arbitration filed a motion for summary judgment and there was resulting discovery, motions, responses and other proceedings; [43]

- Evidence just of attorney's fees incurred by a party opposing arbitration; [44]

- Mere delay; [45]

---

[33] Leggett, 2017 Tex. App. LEXIS 2765 at ** 11-12.

[34] Legoland, 2017 Tex. App. LEXIS 3843 at * 8.

[35] Legoland, 2017 Tex. App. LEXIS 3843 at * 8.

[36] Leggett, 2017 Tex. App. LEXIS 2765 at **11-12.

[37] Legoland, 2017 Tex. App. LEXIS 3843 at * 9.

[38] Legoland, 2017 Tex. App. LEXIS 3843 at * 9.

[39] Pippins, 499 S.W.3d at 430-431.

[40] Legoland, 2017 Tex. App. LEXIS 3843 at ** 9-10.

[41] Handa, 2017 Tex. App. LEXIS at **17-20.

[42] Id.; Joseph Chris Personnel Services, Inc. v. Rossi, 249 Fed. Appx. 988, 991-992 (5th Cir. 2007); PMS Distributing Co. v. Huber & Suhner, A.G., 863 F.2d 639, 641-641 (9th Cir. 1988); Menna v. Romero, 48 S.W.3d 247, 252-253 (Tex. App. San Antonio 2001, no pet.)

[43] Id.

[44] Id.

- Delays of eight months or even two years. [46]

When, as in this case, the Federal Arbitration Act and the Texas General Arbitration Act may apply, this Court looks to both Texas and federal decisions. [47]

Any doubts regarding waiver are resolved in favor of arbitration. [48]

Stay of Interrelated Non-Arbitrated Claims

Once the Court finds that there has been no waiver, then the Court has to decide whether the claims between Diligent, on one hand, and Elite and PDL, on the other hand, have to be stayed pending the resolution of the arbitration of the arbitrated claims between Diligent and York. [49] The Court has to stay the Diligent-Elite/PDL claims when those claims involve issues that will be decided in the Diligent-York arbitration. [50] Moreover, the exercise of the stay is an exercise of the judicial power to determine when a lawsuit is tried and does not equate to prejudice to Elite or PDL. [51]

*Application of the Law to the Facts*

Introduction

The Trial Court stated,

---

[45] Leggett, 2017 Tex. App. LEXIS 2765 at ** 12-13.
[46] Leggett, 2017 Tex. App. LEXIS 2765 at **11-12.
[47] Legoland, 2017 Tex. App. LEXIS 3843 at * 5 at fn. 4.
[48] Leggett, 2017 Tex. App. LEXIS 2765 at **13-14.
[49] Merrill Lynch, 235 S.W.3d at 195-196.
[50] Id.
[51] Id.

… [a]nd so the Court's going to deny the motion to compel arbitration [which included the motion to stay] and the plea to the jurisdiction on the grounds that Diligent has substantially invoked the judicial process by seeking a temporary injunction against Mr. York and obtaining, at least, from a verbal order from the Court's bench, subject to the entry of a written order, injunctive relief and doing so before it ever sought to invoke the right to arbitration under the circumstances, even though from the very beginning, it clearly knew it had the right to arbitration at that point. So it does look like you are trying to get a second bite at the apple, and the Court is going to find that that is inappropriate under the circumstances. So, I'll deny both the motion to compel [which included the motion to stay] and the plea to the jurisdiction under those circumstances (11-9-17 5 RR at 30-31).

In doing so, the Trial Court identified the pervasive reversible errors underpinning this ruling. It did not consider the jurisdictional plea and the motion to stay on their respective merits. It found a waiver of the right to arbitrate that could not exist under the legal framework. It ignored Diligent's straightforward statement in its Original Petition at § 7.06, and in each amended petition, that it would seek to compel arbitration once it had obtained a temporary injunction, and that it would not seek temporary injunctive relief in the arbitration; this is exactly what Diligent did in the first instance and will not do in the second. (1 CR 13.) Two bites at the apple is specifically disclaimed by Diligent.

Jurisdiction and the Motion to Compel Arbitration

The Trial Court had to determine its jurisdiction relative to the arbitrator. [52] The public policy supporting and favoring arbitration vested Diligent and York

---

[52] Haddock, 287 S.W.3d at 171-173.

33

with the vested right to allocate in the Agreement the respective jurisdiction among the courts and the arbitrator relative to the arbitration proceedings. [53]

To give effect to those plain terms, the Trial Court had to determine whether there was an arbitration provision that covered the claims between Diligent and York. [54] Having made that determination, then the Trial Court had to determine what issues it could still determine, if any, and what issues the arbitrator was to decide. [55]

The Trial Court found that there was an arbitration provision that covered the claims between Diligent and York. It had to do so, as there is no dispute that such a provision exists.

The Trial Court then did not directly determine its jurisdiction relative to the arbitrator's jurisdiction. (11-9-17 5 RR 21-31). There is no discussion in the record by the Trial Court in this regard. (Id.) The Trial Court simply denied the arbitration jurisdictional plea because the Trial Court found that Diligent had waived the right to arbitrate, even though the Trial Court lacked the jurisdiction to make that finding (11-9-17 5 RR at 30-31).

---

[53] Id; Rio Grande Xarin, II, Ltd. v. Wolverine Robstown, LP, 2010 Tex. App. LEXIS 5189 ** 22-23 (Tex. App. – Corpus Christi 2010, pet. dism'd.).
[54] Id.
[55] Id.

The Trial Court, thus, abused its discretion when it did not give effect to those plain terms. [56] It failed to follow established law. [57] It acted in a manner that it could not act for which there is no available appeal.[58]

Had the Trial Court not so abused its discretion, then the Trial Court would have given effect to the allocation of jurisdiction established by Diligent and York. The Court could decide whether to issue a temporary injunction and amend the restrictive covenants in the Agreement. The arbitrator would, as vested under Rule R-7 of the AAA Commercial Arbitration Rules, decide all issues of arbitrability and the merits of these claims unless the arbitrator finds that Diligent had waived the right to arbitrate.

The Trial Court had no choice but to grant the jurisdictional plea after the Trial Court issued the temporary injunction. The Trial Court should have compelled arbitration so the arbitrator could decide all issues of arbitrability and the merits of the claims unless the arbitrator would find that Diligent had waived the right to arbitrate. However, this was the arbitrator's call. The Trial Court trampled on the arbitrator's agreed-to jurisdiction, and thus, reversibly erred.

<u>There Could Be No Waiver if the Trial Court Could Consider that Issue</u>

---

[56] See cases at footnotes 1-5, 13-14.
[57] Id.
[58] Id.

Alternatively, the Trial Court reversibly erred when it denied the motion to compel arbitration after it was conceded that there was an arbitration provision that covered the claims between Diligent and York. Diligent and York agreed that the arbitrator was to decide waiver and the Trial Court was not authorized to make the waiver call. Instead, the Trial Court decided waiver, thus impermissibly thwarting York and Diligent's contract. It must be kept in mind at all times that arbitration and its scope is reserved to the parties to the contract containing the arbitration provision.

Arbitration is a favored remedy. [59] Public policy mandates that arbitration be compelled when, as in this case, there is an arbitration provision that admittedly covers the claims between Diligent and York. [60]

The Trial Court, however, found that Diligent had waived the right to arbitrate. There are several reasons for this reversible error.

First, the Trial Court did not explain how it followed the basic legal framework for finding a waiver of the right to arbitrate. (11-9-17 5 RR at 21-31). The Trial Court did not reference the presumption against waiver and the heightened burden to try to overcome that presumption. (Id.) It did not determine or explain how it removed from the exclusive jurisdiction of the arbitrator the right to determine waiver. It did not follow established law (Id.)

---

[59] Legoland, 2017 Tex. App. LEXIS 3843 at **6-7; Haddock, 287 S.W.3d at 169.
[60] Id.

Second, the Trial Court substituted its own test for the existing legal framework. (11-9-17 5 RR at 21-31). The fundamental concept of the legal framework is that Diligent had to act **unequivocally with the intent** to waive the right to arbitrate by acting in a manner **inconsistent** with the right to arbitrate such that any such **inconsistent** conduct was prejudicial to York. [61] The Trial Court does not cite these concepts and discuss how Diligent acted unequivocally, with intent, inconsistently and with prejudice. (Id.) Rather, the Trial Court simply looked to find whether Diligent participated in the litigation. (Id.) It did not follow established law. (Id.)

Third, the Trial Court could not show that Diligent acted with some intent to waive the right to arbitrate when Diligent stated in its Original Petition and the subsequent amended petitions that Diligent filed the petitions without prejudice to the right to arbitrate and with the intent to move to compel to arbitrate once the Trial Court issued a temporary injunction. (11-9-17 5 RR at 21-31). The Trial Court could not dispute that this is exactly what Diligent did. (Id.) The Trial Court does not show and cannot show how Diligent intended to waive the right to arbitrate when Diligent expressed the exact opposite intent not to do so. (Id.)

Fourth, the Trial Court could not demonstrate that Diligent's seeking the issuance of a temporary injunction was inconsistent with the right to arbitrate when

---

[61] Legoland, 2017 Tex. App. LEXIS 3843 at * 7 (emphasis added); Leggett, 2017 Tex. App. LEXIS 2765 at **12-13.

the parties' contract contained qualifying language expressly providing that Diligent could seek such a temporary injunction, and having done so, proceed to arbitration. (11-9-17 5 RR at 21-31). The Trial Court had to give effect to the plain terms of the Agreement which created consistent temporary injunction and arbitration rights.[62] The Trial Court noted that the text of the arbitration provision even contemplated Diligent asking for a temporary injunction. (10-23-17 RR at 25). It never explained why these rights are not consistent when Diligent and York agreed that they were. (10-23-17 RR at 21-31). The Trial Court noted that it could be implied that the right to arbitrate and the right to seek a temporary injunction were consistent, but then never explained and cannot explain how the Trial Court found them to be incompatible under the presumption against waiver and the higher burden to overcome that presumption. (11-9-17 5 RR at 25 and 23-25). The Trial Court could not separate the right to seek injunctive relief from the text of the arbitration provision which provided for explicit consistent remedies. (11-9-17 5 RR 21-31)

Fifth, the Trial Court gave controlling weight to the fact that the plain terms of the Agreement did not expressly state that the right to seek a temporary injunction was not a waiver of the right to arbitrate. (11-9-17 5 RR at 22-25). The Trial Court did not explain, though, how that could exist when the injunctive

---

[62] Haddock, 287 S.W.3d at 171-173.

qualifying language was interposed into the middle of the arbitration provision and in light of the strong presumption against waiving the right to arbitrate and the higher burden of proof. (Id.) It cannot. The issue is whether the temporary injunction and arbitration rights may be consistently pursued and not whether the word "waiver" is found in the arbitration provision when providing for the complementary right to seek a temporary injunction.

Sixth, the Trial Court gave equally controlling weight to the fact that the Texas General Arbitration Act provides limited relief by temporary injunction. (11-9-17 5 RR at 23-24). The Trial Court does not address the Federal Arbitration Act which equally applies to the arbitration provision and permits a party seeking arbitration to seek temporary injunctive relief. (Id.) [63] The Trial Court's ruling wholly conflicts with the federal decisions allowing Diligent to seek a temporary injunction and not waive the right to arbitrate. [64] There should be no conflict with these federal decisions which like the Texas decisions should form a seamless body of law.[65] It also ignores that the parties have the freedom of contract to craft consistent or complementary arbitration and temporary injunction remedies as Diligent and York did in the Agreement. (Id.) It did not follow established law. (Id.)

---

[63] See footnote 42.
[64] Id.
[65] McQueen v. Chevron Corp., 2017 U.S. Dist. LEXIS 207705 * 4-5 (N.D. Cal. December 18, 2017.)

Seventh, the Trial Court expressed concern that Diligent sought two bites at the apple. (11-9-17 5 RR at 29-31). The Trial Court issued a temporary injunction which Diligent then served and seeks to enforce. (App. 2, 7, 8, 9). The Trial Court cited to no evidence that Diligent will ask the arbitrator to reverse or modify the same temporary injunction that Diligent seeks to enforce. (11-9-17 5 RR 21-31). The evidence is to the contrary. (App. 2, 7, 8, 9). First, it cannot be ignored that if there was some concern over Diligent's getting two bites at the apple, there was a simple and time-tested means to see if that was Diligent's intent, namely, to ask its trial counsel who was standing before him. Trial judges do that every day. Second, there is the specific disclaimer in all its petitions and amended petitions where Diligent represents to the court that it has no intention of trying to obtain a different temporary injunction from the arbitrator.

Eighth, the Trial Court correctly notes that filing the lawsuit was not a waiver of the right to arbitrate (11-9-17 5 RR at 21), but it nonetheless infers that somehow filing a lawsuit acknowledging the existence of the right to arbitrate should be held against Diligent since Diligent did not invoke the right to arbitrate until October 10, 2017. (10-23-17 RR at 21, 26). The Trial Court does not explain and cannot explain how it reached its inference when even the Trial Court acknowledged that the arbitration provision contained qualifying language that permitted asking for a temporary injunction, and that Diligent invoked the right to

40

arbitrate when it filed its Original Petition and repeated on multiple occasions that it would arbitrate the merits of the claims once the temporary injunction was entered. (11-9-17 5 RR at 25 – 26). There is no basis under the presumption against waiver of the right to arbitrate and the higher burden to overcome it to make the inference that the Trial Court did. That is especially true when the text of the arbitration provision permitted Diligent to file its petitions with its statement of intent ultimately to arbitrate.

Ninth, the Trial Court assumed that the temporary injunction is an adjudication on the merits. (11-9-17 5 RR at 27). That is legally wrong. The issuance of a temporary injunction is not an adjudication on the merits.[66] Diligent also stated in all of its petitions that it would ask the arbitrator to decide the merits of the claims (1 CR 37-43, 92, 98-99, 334, 343-345, 347, 487, 495-504) The Trial Court did not follow the law. (Id.)

The Trial Court also surmised that the discovery went to the merits of the claims, yet the Trial Court also conceded that it had to decide whether Diligent could prevail on the merits in order to grant the temporary injunction. (11-9-17 5 RR at 27-29). The Trial Court does not explain and cannot explain how its ruling on the temporary injunction represents a ruling on the merits when it only had to

---

[66] EMS USA, Inc. v. Shary, 309 S.W.3d 653, 657 (Tex. App. – Dallas 2010, no pet.)

find, and did find, that Diligent probably could prevail on the merits at arbitration. (Id.)

In addition, the Trial Court suggests that none of the discovery pertained to questions of arbitrability or jurisdiction and therefore represents discovery on the merits, crossing the line and comprising evidence of a waiver of the right to arbitrate. (11-9-17 5 RR at 27). The Trial Court does not explain and cannot explain a basis for this suggestion. The Trial Court admits that the discovery related to the claims which formed the basis of the requested temporary injunction which the arbitration provision contemplated could be sought consistently with the right to arbitrate. (11-9-17 5 RR at 27-29). Thus, that discovery is consistent with the right to arbitrate. The Trial Court did not discuss this point. (Id.) Moreover, discovery even on the merits, as a matter of law, is not a waiver if the discovery relates to discovery that would be conducted in the arbitration. The Trial Court did not address this legal point. (Id.) Nor did it make a distinction regarding discovery that occurred between Diligent and York, which is the only pertinent discovery in this case, and that between Diligent and Elite/PDL, which is not relevant to the alleged waiver of the arbitration with York.[67]

Tenth, the Trial Court suggests that its reformation of the restrictive covenants is inconsistent with the powers of the arbitration. (11-9-17 5 RR at 21-

---

[67] Pippins, 499 S.W.3d at 431

22, 29-31). It does not explain and cannot explain how that can be the case when the plain terms of the Agreement vest the Trial Court with such a power consistent with the powers granted to the arbitrator and the Covenants Not to Compete statute requires reformation, if deemed necessary. (¶6)(App. 3)

The Trial Court may have impliedly adopted the suggestion from York, Elite and PDL that asking for statutory reformation of a non-competition covenant is a final adjudication even when it is done as part of a temporary injunction proceeding. (e.g. 3 CR 1030). This Court has rejected that very argument. [68] The Trial Court did not follow established law if it accepted the suggestion from York, Elite and PDL.

Eleventh, the Trial Court mistakenly avers that Diligent did not invoke the right to arbitrate until October 10, 2017. (11-9-17 5 at 21). It does not discuss that Diligent noted that it would move to compel arbitration after the issuance of a temporary injunction in the very first filed petition and in each subsequent petition. (11-9-17 5 RR at 21-31)(1 CR 37-43, 92, 98-99, 334, 343-345, 347, 487, 495-504). It does not explain and cannot explain how that is a delay in noting Diligent's intentions. (Id.) It also does not discuss the details of what happened regarding the temporary injunction. (Id.) It cannot dispute that it took almost one full year for the Trial Court to sign the temporary injunction. (Id.) During that time, there were

---

[68] Tranter, Inc. v. Liss, 2014 Tex. App. LEXIS 3398 * 4 (Tex. App. – Fort Worth 2017, no pet.).

hearings devoted to granting the temporary injunction, to the form of the injunction, and finally, hearings on getting the temporary injunction signed and to compel arbitration. Diligent said that it would move to compel arbitration after the process would lead to the issuance of a temporary injunction (1 CR 37-43, 92, 98-99, 334, 343-345, 347, 487, 495-504). That is what happened.

Twelfth, the Trial Court does not explain how Elite or PDL can claim any prejudice from any alleged conduct by Diligent that is inconsistent with York's right to arbitrate. (11-9-17 5 RR at 21-31). The claims between Diligent, on one hand, and Elite and PDL, on the other hand, are not covered by the arbitration provision. Those claims are to be tried after the arbitration with York. Thusly, Elite and PDL cannot complain about discovery, pleadings, motions or attorney's fees incurred in the lawsuit which they would have had to participate in or incur as parties to that same lawsuit. Elite and PDL can only complain that the lawsuit will be stayed, but that is a result that is statutorily mandated for judicial economy and cannot be prejudice.[69]

Thirteenth, the Trial Court does not address that York, Elite and PDL cannot file motions for summary judgment, conduct discovery or otherwise engage in the

---

[69] Merrill Lynch, 235 S.W.3d at 195-196; 9 U.S.C.A. § 3; TEX. CIV. PRAC. AND REM CODE §§ 171.025 and 172.174.

lawsuit, and then claim that they have been injured by their own self-inflicted wounds. (11-9-17 5 RR at 21-31).[70]

Fourteenth, the Trial Court does not explain and cannot explain why the conduct by Diligent in the lawsuit can constitute a waiver of the right to arbitrate when the same conduct has already been found not to be such a waiver. (11-9-17-5 RR at 21-31). [71]

Fifteenth, the Trial Court does not explain and cannot explain why all of the disclosure requests and discovery served on York could prejudice York when it would be available in the arbitration and will be used in the arbitration. (11-9-17 5 RR at 21-31).[72]

Sixteenth, the Trial Court relied almost exclusively on the decision in *Holmes v. Graves* [73] to support its finding of waiver. (11-9-17 5 RR at 25-31). The Trial Court does not explain and cannot explain how it overlooked the distinguishing facts and law of that case. It could not do so.

The arbitration provision in *Holmes* did not contain the qualifying language found in the Agreement that York agreed to that permitted Diligent to consistently pursue arbitration and a temporary injunction. *Holmes* was based upon a different text, and this key difference underpinned the holding that "… [w]e reject [the]

---

[70] Handa, 2017 Tex. App. LEXIS at **17-20
[71] See discussion at footnotes 33-46.
[72] Pippins, 499 S.W.3d at 430-431.
[73] 2013 Tex. App. LEXIS 14816 (Tex. App. – Houston [1st Dist.] 2013, no pet).

contention that requesting injunctive relief from the trial court was not a specific or deliberate act that was inconsistent with the right to arbitrate because injunctive relief is not permitted under the applicable rules of arbitration." [74]  Diligent did not first mention arbitration until after an adverse ruling.  *Holmes* was based upon such a change in position when *Holmes* stated that "… [t]hey moved to compel arbitration only after being denied merit-based injunctive relief." [75]  Diligent is not trying to re-adjudicate or modify the temporary injunction.  *Holmes* was based upon such an attempt. [76] The Trial Court wrongly followed *Holmes* because the Trial Court failed to apply the basic legal framework.  Had it done so, it would not have followed *Holmes*.

The arbitration agreement in Diligent's contract with York had qualifying language reserving to the Trial Court jurisdiction to rule on the request for a temporary injunction. The Trial Court stood that limited reservation on its head by saying it had the effect of waiving the arbitration provision.

<u>There Are No Additional Bases to Support the Trial Court's Rulings</u>

The foregoing analysis demonstrates the reversible errors underpinning the ruling that Diligent waived the right to arbitrate based upon the Trial Court's stated

---

[74] Id. at ** 15-16.
[75] Id. at * 15.
[76] Id. at * 17.

bases for that ruling. There are no other bases pleaded by York, Elite or PDL that supports that ruling.

The Trial Court's stated bases for its ruling on waiver tracks the pleaded arguments made by York, Elite or PDL. (e.g. 3 CR 1018, 1029, 1089). York and Elite, however, also allege that Diligent's motions to quash the depositions of corporate representatives regarding trade secrets constituted prejudice. (e.g. 3 CR 1023). York and Elite do not explain and cannot explain under the presumption against waiver of the right to arbitrate and the higher burden to try to overcome that presumption how not being able to depose Diligent's corporate representative(s) can overcome that presumption and meet their burden. (Id.) They further do not show that they will not get any missing depositions as part of the arbitration or as part of the trial against Elite and PDL once the arbitration is completed. (Id.)

York, Elite and PDL surmise that Diligent only moved to compel arbitration when Diligent was faced with summary judgment motions. (e.g. 3 CR 1032). Yet, they do not explain and cannot explain that Diligent stated that it would move to compel arbitration on the merits of the claims to be arbitrated once there was a ruling on the requested temporary injunction long before any summary judgment motion was filed, and Diligent did what it said it would do. (1 CR 37-43, 92, 98-99, 334, 343-345, 347, 487, 495-504). They further do not explain why Diligent

should be so afraid when the Trial Court found that Diligent would likely prevail on the same merits challenged by the summary judgment motions by granting the temporary injunction. [77] York, Elite and PDL do not explain and cannot explain under the presumption against waiver of the right to arbitrate and the higher burden to try to overcome that presumption how Diligent doing what it said it would do from the start of the case can overcome that presumption and meet their burden of proof.

There is a pervasive error in the arguments of York, Elite and PDL. Significantly, York, Elite and PDL fail to address that presumption and their burden of proof. (e.g. 3 CR 1018, 1029, 1089). They do so, because they cannot do either. (Id.)

The preceding analysis showing the errors made by the Trial Court and in the arguments of York, Elite and PDL provides the actual answers to the several questions [78] to be asked regarding waiver of the right to arbitrate when viewed under the legal framework. They also show how the Trial Court, York, Elite and PDL did not correctly answer those questions.

Taken together or separately, that prior analysis demonstrates reversible error. When this Court conducts a *de novo* review based upon the Clerk's Record, the presumption against the right to arbitrate, and the heightened burden imposed

---

[77] Shary, 309 S.W.3d at 657.
[78] See questions at footnote 31.

48

upon York, Elite and PDL to try to overcome that presumption, then this Court will rule that Diligent did not waive the right to arbitrate by conduct inconsistent with that right with the unequivocal intent to do so. [79] Alternatively, when this Court conducts an abuse of discretion review, then this Court will find that the Trial Court did not follow established law, did not do what a trial court could have done, and failed to give effect to Diligent's vested substantive arbitration rights in a manner for which there is no adequate appeal. [80] Alternatively, no reasonable fact-finder could find waiver of the right to arbitrate under the presumption against such waiver and the heightened burden to try to overcome that presumption. There is no evidence of such a waiver. [81] Alternatively, any finding of waiver under the presumption against such waiver and the heightened burden to try to overcome that presumption is so against the great weight of the credible evidence to be manifestly unjust and wrong. [82]

### The Stay is Mandatory

Alternatively, the Trial Court reversibly erred when it denied the motion to stay the claims between Diligent, on one hand, and Elite and PDL, on the other hand, pending the resolution of the arbitration of the claims between Diligent and

---

[79] See cases cited at footnotes 6-14, 19-48.
[80] See cases cited at footnotes 3-14, 19-48.
[81] See cases cited at 15.
[82] Id.

York. The Trial Court had to stay the Diligent-Elite/PDL claims, but failed to do so.

Arbitration is a favored remedy. [83] It is implemented through the terms of the arbitration provision in the Agreement. [84] The public policy favoring arbitration is undermined if the issues to be decided by the arbitrator are also tried by the Trial Court. [85] The stay is statutorily mandated by both federal and state law.[86]

As a result, when issues to be decided by the arbitrator to resolve the claims of Diligent and York are also involved in the resolution of the claims between Diligent, on one hand, and Elite and PDL, on the other hand, outside of arbitration, then the Diligent-Elite/PDL claims must be stayed pending resolution of the Diligent/York claims in arbitration. [87] Otherwise, Diligent and York will be denied their protected and vested right to have the arbitrator decide the issues involved in the arbitration. [88] The stay is a proper application of the Trial Court's power and judicial economy to decide when the Diligent-Elite/PDL claims are resolved. [89]

The Trial Court did not mention this mandatory law. (11-7-17 5 RR 1-45). It did not mention the interconnected issues involved in the resolution of the claims

---

[83] Legoland, 2017 Tex. App. LEXIS 3843 at **6-7; Haddock, 287 S.W.3d at 169.
[84] Id.
[85] Merrill Lynch, 235 S.W.3d at 195-196.; 9 U.S.C.A. § 3; TEX. CIV. PRAC. AND REM CODE §§ 171.025 and 172.174.
[86] Id.
[87] Id.
[88] Id.
[89] Id.

of Diligent-York claims and the Diligent-Elite/PDL claims. (Id.)  The Trial Court had to consider both the law and the relevant issues.  Its failure to do so is reversible error.

Had the Trial Court reviewed those issues under the law, then the Trial Court would have no choice but to grant the motion to stay.  The stay inescapably flows from a review of the issues in the Diligent-York arbitration and the Diligent-Elite/PDL lawsuit.

Diligent claims that York breached the restrictive covenants in the Agreement and the NDLI Contract, that Elite and PDL tortiously interfered with the Agreement or the NDLI Contract by directing York to breach these restrictive covenants and by poaching customers of Diligent, and that York, Elite and PDL jointly or severally misappropriated Diligent's trade secrets. (e.g. 1 CR 8, 37, 92, 109, 334, 379, 487; 2 CR 825; 3CR 1005). These are the claims that Diligent stated would be resolved in arbitration from the filing of the original petition.   (1 CR 37-43, 92, 98-99, 334, 343-345, 347, 487, 495-504).

York, Elite and PDL dispute just about every element of Diligent's respective claims. (1 CR 18, 21, 47, 50, 193, 325, 375; 2 CR 542, 585, 611, 518, 960; 3 CR 1099). York, Elite and PDL further have raised denials, defense issues, affirmative defenses and affirmative claims that question the existence of any trade secrets of Diligent, that question the enforceability of the Agreement or the NDLI

Contract, that question the conduct of York to breach the restrictive covenants or to misappropriate Diligent's trade secrets, that question whether Elite or PDL directed York to breach the Agreement or the NDLI Contract, that question whether York, Elite or PDL misappropriated trade secrets of Diligent, and whether they conspired to do so. (Id.) These are elements of the claims between Diligent and York which will be decided by the arbitrator.[90]

If the stay is not imposed, then the arbitrator and the Trial Court will decide some of the very same issues. Without the stay, then it would be possible for the arbitrator to reach different results on the very same issue. The stay is designed to prevent that from happening.

The Trial Court, thus, abused its discretion when it did not give effect to those plain terms. [91] It failed to follow established law. [92] It acted in a manner that it could not act for which there is no available appeal.[93]

---

[90] TEX. CIV. PRAC. & REM CODE §§ 134A.002, 143A.004, 134A007; City of The Colony v. N. Tex. Mun. Water Dist., 272 S.W.3d 699, 738 (Tex. App. – Fort Worth 2008, pet. dism'd); RSM Prod. Corp. v. Global Petroleum Grp., Ltd., 507 S.W.3d 383, 393 (Tex. App. – Houston [1st Dist.] 2016, pet. denied); Zep Mfg. Co. v. Harthcock, 824 S.W.2d 642, 662 (Tex. App. – Dallas 1992, no pet.); Rugen v. Interactive Business Svs., 864 S.W.2d 548, 551 (Tex. App. – Dallas 1993, no pet.); Cell Comp, LLC v. Southwestern Bell Wireless, LLC, 2008 Tex. App. LEXIS 4510 * 20 (Tex. App. – Corpus Christi 2008, no pet.)

[91] See cases at footnotes 1-5, 11-14.

[92] Id.

[93] Id.

## Conclusion and Prayer

Based on the foregoing, the Trial Court failed to follow the law and misapplied the law to the facts. Therefore, the Trial Court abused its discretion when it found that Diligent had waived the right to arbitrate its claims with York.

The Trial Court reversibly erred for the above stated reasons. The Court should reverse the Trial Court. The Court should compel arbitration of the claims between Diligent and York. The Court should stay all proceedings in the Trial Court between Diligent, on one hand, and Elite and PDL, on the other hand. The Court should grant Diligent all other whole, partial, general, specific or other relief which is requested or to which it is justly entitled.

Respectfully submitted,

Zukowski, Bresenhan & Piazza, L.L.P.

_/s/Maurice Bresenhan, Jr._
Maurice Bresenhan, Jr.
State Bar No. 02959000
mbresenhan@zbplaw.com
Pascal Paul Piazza
State Bar No. 15966850
ppp@zbplaw.com
Cynthia Keen Perlman
State Bar No. 11161700
CPerlman@zbplaw.com
1177 West Loop South, Suite 1100
Houston, Texas 77027
(713) 965-9969/(713) 963-9169 (Fax)
**Attorneys for Appellants**

## CERTIFICATE OF SERVICE

On December 21, 2017, I electronically filed this Brief of Appellant with the

Clerk of the Court using the ECF filing system which will send notification of such

filing to the following:

Russell A. Devenport
McDonald Sanders, P.C.
777 Main Street, Suite 1300
Fort Worth, Texas 76102
*ECF and Email:* [rdevenport@mcdonaldlaw.com](mailto:rdevenport@mcdonaldlaw.com)

S. Gary Werley
Law Offices of S. Gary Werley
1840 Acton Highway, Suite 102
Granbury, TX 76049
*ECF and Email:* [sgwerley@werleylaw.com](mailto:sgwerley@werleylaw.com)


*/s/ Maurice Bresenhan, Jr.*

## CERTIFICATE OF COMPLIANCE

Based upon the word count run in Microsoft Word 2013, this brief contains 11467 words inclusive of all sections.

*/s/ Maurice Bresenhan, Jr.*

No. 02-17-00416-CV

---

In the Court of Appeals for the Second District in Fort Worth, Texas

---

Diligent Texas Dedicated, LLC d/b/a Diligent Delivery Systems,

*Appellant,*

v.

Richard York, Elite Parts Group, LLC d/b/a Elite Parts Group
and Principle Distribution, Inc.

*Appellees.*

---

On Appeal from the 342nd Judicial District Court, Tarrant County, Texas

---

**APPENDIX**

---

Maurice Bresenhan, Jr.
State Bar No. 02959000
mbresenhan@zbplaw.com
Pascal Paul Piazza
State Bar No. 15966850
ppp@zbplaw.com
Cynthia Keen Perlman
State Bar No. 11161700
CPerlman@zbplaw.com
Zukowski, Bresenhan & Piazza, L.L.P.
1177 West Loop South, Suite 1100
Houston, Texas 77027
(713) 965-9969/(713) 963-9169 (Fax)
**Attorneys for Appellants**

Copy

CAUSE NO. 342-289368-16

| | | |
|---|---|---|
| DILIGENT TEXAS DEDICATED, LLC | § | IN THE DISTRICT COURT |
| d/b/a DILIGENT DELIVERY | § | |
| SYSTEMS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 342nd JUDICIAL DISTRICT |
| | § | |
| RICHARD YORK AND YORK ELITE | § | |
| PARTS GROUP, LLC D/B/A ELITE | § | |
| PARTS GROUP, | § | |
| Defendants. | § | TARRANT COUNTY, TEXAS |

## ORDER ON PLAINTIFF'S MOTION TO COMPEL AND MOTION TO ABATE

ON THIS 9th DAY OF NOVEMBER 2017, came on to be heard the Motion to Compel and Motion to Abate filed by Plaintiff Diligent Texas Dedicated, LLC d/b/a Diligent Delivery Systems ("Diligent"). Plaintiff and Defendants appeared by their attorney of record. The court, after review of the motion and after hearing arguments, is of the opinion that the Motion to Compel and Motion to Abate should be, in all things, DENIED.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion to Compel and Motion to Abate is DENIED.

SIGNED this 9th day of November, 2017.

_____
JUDGE PRESIDING

ORDER on Motion to Compel and Motion to Abate / Diligent v. Elite                    Solo Page

342-289368-16

FILED
TARRANT COUNTY
7/14/2017 1:13 PM
THOMAS A. WILDER
DISTRICT CLERK

Cause No. 342-289368-16

| | | |
|---|---|---|
| Diligent Texas Dedicated, LLC d/b/a | § | In the District Court of |
| Diligent Delivery Systems, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Tarrant County, Texas |
| | § | |
| Richard York and York Elite Parts | § | |
| Group, LLC d/b/a Elite Parts Group, | § | |
| | § | |
| Defendants | § | 342nd Judicial District |

## TEMPORARY INJUNCTION

After considering the application for temporary injunction filed by plaintiff Diligent Texas Dedicated, LLC d/b/a Diligent Delivery Systems ("Diligent") against defendants Richard York ("York") and York Elite Parts Group, LLC d/b/a Elite Parts Group ("Elite"), the pleadings, the testimony and evidence presented at the hearing, and the arguments of counsel, the Court finds that an injunction should be granted in part as set forth herein. The Court finds there is evidence that harm is imminent to Diligent, and if the Court does not issue the temporary injunction, Diligent will be irreparably injured because Richard York will continue to use information he received from Diligent, including pricing information, to actively solicit customers that he dealt with while employed by Diligent for the benefit of Principle Distribution, LLC ("PDL"), in violation of his confidentiality and non-solicitation clauses in the employment agreement between

1 | P a g e

E-MAILED
Brenham,
Davenport, Wray
Pennell

Diligent and York, the Texas Uniform Trade Secrets Act, and Texas common law.

Therefore, by this order, the Court does the following:

a. **RESTRAINS, ENJOINS, and PROHIBITS** Richard York, and his officers, agents, servants, employees, attorneys, and persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, from:

   (i)   Using or disclosing Diligent's confidential and proprietary information and trade secrets, including customer identity, customer contact information, pricing, and profit margins, to any person who provides automotive parts logistics services; and

   (ii)  *Actively* Soliciting the business of or making contact with, for any competitive purpose, any Diligent customers with whom York dealt while in Diligent's employ (the "Diligent Customers"); and

   ~~(iii) Otherwise transacting business for logistics services with the Diligent Customers.~~

b. Nothing in this Order shall prohibit York from doing business with Diligent Customers in connection with the provision of auto parts marketing services *passively* for Elite. Nothing in this Order shall prohibit York from responding to unsolicited inquiries from Diligent Customers, so long as York does not initiate the contact or divulge information he received through Diligent that is not already known by that customer. However, York shall not actively solicit any Diligent Customer for referral to any other provider of automotive parts logistics services, including but not limited to PDL.

~~c. York shall immediately notify counsel for Diligent of any contacts, active or passive, between any Diligent customer and him without regard to who initiated the contact.~~

c. Sets this matter for trial on the 22nd day of _January_, 2018 at 9:00 a.m.; and

d. Sets bond at $10,000. *Said bond may be paid by firm check.* 11/15/17

e. This temporary injunction expires upon entry of a final judgment in this matter.

Signed on this 9th day of _November_, 2017 at _12_:_19_ _p_.m.

_____
Hon. Wade Birdwell, State District Judge

APPROVED AS TO FORM:

ZUKOWSKI, BRESENHAN & PIAZZA LLP
1177 West Loop South, Suite 1100
Houston, TX 77027
(713) 965-9969 (phone)
(713) 963-9169 (fax)


By: _/s/Maurice Bresenhan, Jr._
       Maurice Bresenhan, Jr.
       State Bar No. 02959000
       mbresenhan@zbplaw.com
       Kevin R. Pennell
       State Bar No. 24046607
       kevin@zbplaw.com

ATTORNEYS FOR PLAINTIFF

# DILIGENT DELIVERY SYSTEMS EMPLOYEE CONFIDENTIALITY AND BUSINESS PRESERVATION AGREEMENT

This Agreement is entered into and effective for the entire period of Employee's employment as of _Oct. 27_, 20_15_ between _Nick York_ "Employee" and _Diligent Delivery System_ Employee's current employer ("Employer"). This Agreement will inure to the benefit and be enforceable by the Employer and by Norlyn Enterprises, Inc., Arizona Logistics, Inc., Michigan Logistics, Inc., California Logistics, Inc., GDC Holdings, Inc., GSF Logistics, Inc., Northwest Logistics, Inc., Western Logistics, Inc., Northeast Logistics, Inc., Southeast Logistics, Inc., Central States Logistics, Inc., BBB Logistics, Inc., and any affiliate thereof. "Affiliate" means a person or entity that directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, another person or entity.

Whereas, Employer is currently engaged in the business of marketing and providing business services including but not limited to human resource assistance on a temporary basis to the automotive and automotive service industry, and to the business of freight forwarding and freight delivery, and in connection therewith, develops, possesses and utilizes certain confidential and proprietary information;

Whereas, Employer's and their Affiliates' area of business operations are throughout the United States and Employee will be exposed to those operations;

Whereas, Employee desires employment by Employer, in which capacity Employee will have access to and utilize Employer's confidential and proprietary information and will further assist Employer in the development and procurement of additional information which shall also become the proprietary and confidential information of Employer;

Whereas, Employee is employed on an "at will" basis and shall remain employed on that basis unless there is a written agreement signed by Employee and the President/CEO of Employer altering that basis; and

Whereas, Employer desires to engage Employee subject to securing from Employee certain agreements relative to maintaining the confidentiality of its confidential and proprietary information and agreeing not to use such information to compete with Employer.

NOW THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1.     This Agreement is to be construed in light of the preceding recitals and to give each of them full effect.

Please Initial _NY_ Confidentiality and Business Preservation Agreement-US

EXHIBIT
York
2/9/17

2. For purposes of this Agreement, "Confidential Information" shall collectively refer to all information or material disclosed or provided to Employee either orally or in writing pursuant to this Agreement, either before or after the date hereof, concerning any aspect of the business of Employer or its affiliates, including without limitation any information or material pertaining to systems, processes, techniques, products, formulae, schedules, computer programs and software, specifications, designs, plans, policies, procedures, employees, work conditions, legal and regulatory affairs, assets inventory, pricing and contract terms, discoveries, trademarks, patents, trade secrets, sales, marketing expenses, financial statements and data, customer and supplier lists, business and marketing plans, arrangements, objectives, locations, information, costs, relationships with third parties and the identity of owner operators providing contract services to Employer and to Employer's client. Confidential Information also includes notes, analyses, compilations, studies or other material or documents prepared by Employer or Employee which contain, reflect or are based in whole or in part on the Confidential Information. Confidential Information also includes customer and prospect lists, pricing schedules, accounting and financial information, marketing strategies, business methods and other business information including but not limited to company operating procedures, standards and specifications and other intellectual property including non-public trade secrets, proprietary information and know-how, marketing and training programs and materials. Confidential Information shall remain the property of Employer, and Employee shall not divulge the Confidential Information or use the Confidential Information except in the proper performance of Employee's duties associated with Employee's employment with Employer. Employee's obligations relating to the confidentiality of the Confidential Information shall remain in effect during the term of Employee's employment and shall continue afterward.

Employee will not be prohibited from using information that (i) Employee possessed prior to Employee's employment with the Employer and which is listed on Appendix A hereto, or (ii) is a matter of public knowledge through no action on Employee's part on or prior to the date of the end of Employee's employment with Employer. In all cases, the burden of proof shall be on Employee to establish by a preponderance of credible and admissible evidence the existence of exceptions (i) or (ii) or both.

3. Employee agrees not to divulge, communicate, or use to the detriment of the Employer or affiliates, for Employee's benefit or the benefit of any other person, firm, corporation, association or other entity, or misuse in any way, in whole or in part, any proprietary or Confidential Information of Employer, and Employee further agrees to hold such proprietary and Confidential Information in strictest confidence and not to make use thereof other than for the benefit of Employer.

4. Employer and Employee agree that Employer would be irreparably damaged in the event that Employee should compete against Employer during Employee's term of

Please Initial ___ Confidentiality and Business Preservation Agreement-US                  - 2 -

employment with Employer. Employee agrees, because of considerations including the proprietary and confidentiality of the Confidential Information made available to Employee as part of Employee's employment, not to directly or indirectly, by virtue of being an employee, proprietor, partner, stockholder, agent, through family relationships or by financing or investing in same, be associated with another business offering the same or similar services as that of Employer or which competes directly or indirectly with the business of Employer anywhere in the United States during the term of Employee's employment with Employer unless approved in advance and in writing by Employer.

5. Employer and Employee agree that Employer would be irreparably damaged in the event Employee should compete against Employer for a period of time following termination of Employee's employment with Employer for any reason. Employee agrees because of considerations including the proprietary and confidentiality of the Information made available to Employee as part of Employee's employment, that for a period of two years following the termination of Employee's employment with Employer for any reason, Employee shall not: a) directly or indirectly by virtue of being an employee, proprietor, partner, stockholder, agent, through family relationship or by financing or investing in same, be associated with another business offering the same or similar services as that of Employer or which competes directly or indirectly with the business of Employer anywhere in the United States; b) solicit the business of, accept business from or make contact with the customers or prospective customers of Employer for any competitive purpose; or c) persuade, entice or attempt to persuade or entice any employees of Employer to discontinue employment with Employer.

A "Customer of Employer" means a person or entity that was solicited by Employer for business services, sought to obtain business services from Employer or received business services from Employer, during the one year period before the termination of Employee's employment.

6. Because of the irreparable injury which would be caused by a breach of the provisions set forth in 3, 4 and 5 above, Employee understands and agrees to the issuance of a temporary injunction by a court of proper jurisdiction to protect Employer from such breach. This remedy is not exclusive and Employer shall have all other remedies that are available at law or in equity. In the event Employee does not comply with the aforesaid covenants as of the date they would go into force and effect under the terms of this Agreement, then the time such covenants begin to run shall commence on the later of either the date at which Employee does begin to comply therewith, or the date at which a court order compelling Employee's compliance goes into effect. If any of the above-noted restrictions are ever determined as of the date of enforcement to be unlawful or unreasonable, then in such event, the covenants hereinabove which restrict Employee's activities shall be amended, by the Court or Arbitrator having jurisdiction over the

Please Initial _____ Confidentiality and Business Preservation Agreement-US      - 3 -

parties' dispute, to provide that such restrictions shall apply for the maximum time and geographic scope permitted by applicable law. Nothing relating to the foregoing covenants shall be deemed to prohibit Employee from acquiring as a passive investor with no involvement in the operations of the business, stock in a publicly traded company on the national securities exchange or over the counter.

7.     Employee understands and agrees that Employer has not hired Employee for the purpose of obtaining or using the propriety or trade secret information of any other person or entity. Employee accordingly agrees and represents to Employer that the use of any other person or entity's proprietary or trade secret information is unnecessary to the performance of Employee's job duties for Employer. Employee agrees and warrants not to use or to disclose the proprietary or trade secret information of any other person or entity in carrying out Employee's job duties for Employer.

8.     No change or modification of any part of this Agreement by the parties shall be valid unless such change or modification is made in writing and signed by both parties. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party alleged to have waived its right under the Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement and supersedes all prior and contemporaneous negotiations, commitments, writings or other agreements, either oral or written, between the parties with respect to the subject matter of this Agreement.

9.     This Agreement and its interpretation and enforcement shall be governed by the laws of the State of Texas without the application of its choice of law rules. If there is any dispute about or involving Employee and Employer, both Employer and Employee agree to exclusive personal jurisdiction and venue in the state and federal courts of the United States located in Harris County, Texas. Either Employer or Employee may demand that any dispute between Employer and Employee must be settled by arbitration utilizing the dispute resolution procedures of the American Arbitration Association (AAA) (Commercial Rules) only in Harris County, Texas; provided, however, that the foregoing shall not prevent Employer from seeking injunctive relief in a court of competent jurisdiction. The resolution of any dispute will be limited to Employee and Employer. The dispute resolution, or any portion of it, will not be consolidated with any other arbitration or lawsuit and will not be conducted on a class-wide, class action or other type of mass action basis.

10.     In the event a claim is filed or brought contrary to the preceding paragraph, it shall be considered improperly filed and shall, on the motion of the party that did not bring the improperly filed or brought proceeding, be dismissed. In all proceedings, each party will bear their respective attorneys' fees and costs. The arbitrator, if arbitration is demanded, or the court, if no arbitration demand is made, shall determine the party that is

to pay applicable filing and administrative fees and the fees of the arbitrator. In the event of a dispute and in the further event Employer is the prevailing party, Employer shall have the right to recover its reasonable attorneys' fees from Employee.

EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

11. This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their respective legatees, distributees, estates, executors, administrators, heirs, successors and assigns, and other legal representatives. Employee will have no right to assign or transfer any of the rights or obligations of this Agreement to any other person without the Employer's express written consent. Employer will have the right to assign and transfer the rights and obligations of this Agreement to any person that purchases all, or substantially all, of the assets of the Employer or any of its subsidiaries or affiliates, or is otherwise a successor-in-interest to the Employer, and this Agreement is enforceable by the Employer and any of its subsidiaries or affiliates and any successor-in-interest by merger, sale, acquisition, or transfer.

For a period of two years after the termination of Employee's employment, Employee agrees to notify Employer in writing within 2 days of Employee's employment of the identity of each of his/her new employers. Employee agrees that Employer can provide each new employer with a copy of this Agreement.

12. If, for any reason, Employee's employment with the Employer terminates, then notwithstanding such termination, those provisions which must remain in effect in order for the parties' intent to be effectuated shall remain in full force and effect, and shall survive termination of Employee's employment and termination of this Agreement.

EMPLOYER:

By: Larry Browne, President

EMPLOYEE:

Signature

Printed name

Please Initial _____ Confidentiality and Business Preservation Agreement-US

- 5 -

## APPENDIX A

## EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS

1. Confidential Information. Except as set forth below, I acknowledge at this time that I know nothing about the Company's Confidential Information, as defined in the Agreement, except information that has been disclosed to me by the Company and/or during the course of my employment with the Company:

None_____✓_____

Information specifically described below:_____

_____

_____

2. Prior Inventions. Except as set forth below, I acknowledge at this time that I have not made or reduced to practice, either alone or jointly with others, any Inventions other than Inventions that constitute Works, as defined in the Agreement. For purposes of this Statement, Inventions means any discoveries, developments, designs, ideas, improvements, formulas, processes, techniques, or other similar know-how (whether or not patentable or registrable under copyright or similar statutes) made, conceived, reduced to practice that is related to or useful in the Company's Business, as defined in the Agreement.

None_____✓_____

Information specifically described below:

_____

_____

_____

_____

Date: 10/27/2015

Signature: _____



# Commercial

Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Commercial Disputes**



Available online at **adr.org/commercial**

Rules Amended and Effective October 1, 2013
Fee Schedule Amended and Effective October 1, 2017

**(b)** A respondent may file a counterclaim at any time after notice of the filing of the Demand is sent by the AAA, subject to the limitations set forth in Rule R-6. The respondent shall send a copy of the counterclaim to the claimant and all other parties to the arbitration. If a counterclaim is asserted, it shall include a statement setting forth the nature of the counterclaim including the relief sought and the amount involved. The filing fee as specified in the applicable AAA Fee Schedule must be paid at the time of the filing of any counterclaim.

**(c)** If the respondent alleges that a different arbitration provision is controlling, the matter will be administered in accordance with the arbitration provision submitted by the initiating party subject to a final determination by the arbitrator.

**(d)** If the counterclaim does not meet the requirements for filing a claim and the deficiency is not cured by the date specified by the AAA, it may be returned to the filing party.

## R-6. Changes of Claim

**(a)** A party may at any time prior to the close of the hearing or by the date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in administrative fee, the balance of the fee is due before the change of claim amount may be accepted by the arbitrator.

**(b)** Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have a period of 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

## R-7. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

FILED
TARRANT COUNTY
12/13/2017 4:07 PM
THOMAS A. WILDER
DISTRICT CLERK

No. 342-289368-16

| | | |
|---|---|---|
| Diligent Texas Dedicated, LLC d/b/a Diligent Delivery Systems, *Plaintiff* | § § § § | In the District Court of |
| v. | § § § | Tarrant County, Texas |
| Richard York, et al *Defendants.* | § § § | 342nd Judicial District |

### Notice of Past Due Findings of Fact and Conclusions of Law

Pursuant to TEX. R. CIV. P. 297, Diligent Texas Dedicated, LLC d/b/a Diligent Delivery Systems ("Diligent") serves this "Notice of Past Due Findings of Fact and Conclusions of Law." Diligent requested findings of fact and conclusions of law on November 20, 2017 and again on November 22, 2017. The original deadline to sign and file findings of fact and conclusions of law was December 11, 2017 and December 12, 2017, respectively. **Please bring this notice immediately to the attention of the Court.**

Respectfully submitted,

Zukowski, Bresenhan & Piazza LLP

*/s/Maurice Bresenhan, Jr.*
Maurice Bresenhan, Jr.
State Bar No. 02959000
mbresenhan@zbplaw.com
1177 West Loop South, Suite 1100
Houston, TX 77027
(713) 965-9969 (phone)/(713) 963-9169 (fax)

## Certificate of Service

I certify service of a true and correct copy of this Notice of Past Due Findings of Fact and Conclusions of Law on December 13, 2017 as follows:

Russell A. Devenport
McDonald Sanders, P.C.
777 Main Street, Suite 1300
Fort Worth, Texas 76102
*ECF and Email:* *rdevenport@mcdonaldlaw.com*

S. Gary Werley
Law Offices of S. Gary Werley
1840 Acton Highway, Suite 102
Granbury, TX 76049
*ECF and Email:* *sgwerley@werleylaw.com*

_____*/s/ Maurice Bresenhan, Jr.*_____

342-289368-16

# AFFIDAVIT OF SERVICE

**State of Texas**
Case Number: 342-289368-16

**County of Tarrant**

**342nd District Court**

Plaintiff:
**Diligent Texas Dedicated, LLC d/b/a**
**Diligent Delivery Systems**

vs.

Defendant:
**Richard York, York Elite Parts Group**
**d/b/a Elite Parts Group and Principle**
**Distribution, LLC**

For: **Maurice Bresenhan, Jr.**
**Zukowski, Bresenhan & Piazza, LLP**
**1177 W. Loop South, Suite 1100**
**Houston, TX. 77027**

Received by me on the 1st day of December, 2017 at 3:50 pm to be served on **Principle Distribution, LLC c/o Russell Devenport at 777 Main St., Suite 1300, Fort Worth, TX. 76102.**

I, Michael Northrup PSC-934, being duly sworn, depose and say that on the **1st day of December, 2017** at **4:14 pm**, Delivered to the within **Principle Distribution, LLC c/o Russell Devenport at 777 Main St., Suite 1300, Fort Worth, TX. 76102,** a true copy of the **Writ of Temporary Injuction,** with the date of service endorsed thereon by me.

I am over the age of eighteen, not a party to nor interested in the outcome of the above numbered suit and that I am an Authorized Process Server. I have personal knowledge of the facts set forth in the foregoing affidavit and declare that the statements therein contained are true and correct to the best of my knowledge.

My name is Michael Northrup, my date of birth is 12/6/1968, and my address is 4621 S. Cooper St. #131, Arlington, TX. 76017 I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Tarrant County, State of Texas, on the **12th day of December, 2017.**

**Michael Northrup PSC-934**
**Expiration 9/30/2019**
Process Server

**Elite Due Process, LLC**
**4621 S. Cooper St. #131**
**Arlington, TX 76017**
**(800) 531-5885**

342-289368-16

# AFFIDAVIT OF SERVICE

FILED
TARRANT COUNTY
12/14/2017 3:13 PM
THOMAS A. WILDER
DISTRICT CLERK

**State of Texas**
Case Number: 342-289368-16

**County of Tarrant**

**342nd District Court**

Plaintiff:
**Diligent Texas Dedicated, LLC d/b/a
Diligent Delivery Systems**

    vs.

Defendant:
**Richard York, York Elite Parts Group
d/b/a Elite Parts Group and Principle
Distribution, LLC**

For: **Maurice Bresenhan, Jr.**
**Zukowski, Bresenhan & Piazza, LLP**
**1177 W. Loop South, Suite 1100**
**Houston, TX. 77027**

Received by me on the 1st day of December, 2017 at 3:50 pm to be served on **Richard York c/o Gary Werley at 1840 Acton Hwy., Suite 102, Granbury, TX. 76049.**

I, Michael Northrup PSC-934, being duly sworn, depose and say that on the **7th day of December, 2017** at **3:00 pm,** Delivered to the within **Richard York c/o Gary Werley at 1840 Acton Hwy., Suite 102, Granbury, TX. 76049,** a true copy of the **Writ of Temporary Injuction,** with the date of service endorsed thereon by me.

I am over the age of eighteen, not a party to nor interested in the outcome of the above numbered suit and that I am an Authorized Process Server. I have personal knowledge of the facts set forth in the foregoing affidavit and declare that the statements therein contained are true and correct to the best of my knowledge.

My name is Michael Northrup, my date of birth is 12/6/1968, and my address is 4621 S. Cooper St. #131, Arlington, TX. 76017 I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Tarrant County, State of Texas, on the **12th day of December, 2017.**

**Michael Northrup PSC-934**
**Expiration 9/30/2019**
Process Server

**Elite Due Process, LLC**
**4621 S. Cooper St. #131**
**Arlington, TX 76017**
**(800) 531-5885**

342-289368-16

# AFFIDAVIT OF SERVICE

**State of Texas**                     **County of Tarrant**               **342nd District Court**
Case Number: 342-289368-16

Plaintiff:
**Diligent Texas Dedicated, LLC d/b/a
Diligent Delivery Systems**

     vs.

Defendant:
**Richard York, York Elite Parts Group
d/b/a Elite Parts Group and Principle
Distribution, LLC**

For: **Maurice Bresenhan, Jr.
Zukowski, Bresenhan & Piazza, LLP
1177 W. Loop South, Suite 1100
Houston, TX. 77027**

Received by me on the 1st day of December, 2017 at 3:50 pm to be served on **York Elite Parts Group d/b/a Elite Parts Group c/o Gary Werley at 1840 Acton Hwy., Suite 102, Granbury, TX. 76049.**

I, Michael Northrup PSC-934, being duly sworn, depose and say that on the **7th day of December, 2017** at **3:00 pm,** Delivered to the within **York Elite Parts Group d/b/a Elite Parts Group c/o Gary Werley at 1840 Acton Hwy., Suite 102, Granbury, TX. 76049,** a true copy of the **Writ of Temporary Injuction,** with the date of service endorsed thereon by me.

I am over the age of eighteen, not a party to nor interested in the outcome of the above numbered suit and that I am an Authorized Process Server. I have personal knowledge of the facts set forth in the foregoing affidavit and declare that the statements therein contained are true and correct to the best of my knowledge.

My name is Michael Northrup, my date of birth is 12/6/1968, and my address is 4621 S. Cooper St. #131, Arlington, TX. 76017 I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Tarrant County, State of Texas, on the **12th day of December, 2017.**

**Michael Northrup PSC-934
Expiration 9/30/2019**
Process Server

**Elite Due Process, LLC
4621 S. Cooper St. #131
Arlington, TX 76017
(800) 531-5885**